The Lehigh & Wilkes-Barre Coal Company, Appellant, *v.* Annie A. Wright, Carrie G. Wright, George R. Wright, Thomas Graeme and Ellen H., his Wife, C. E. Hawley, Mary Hawley and James J. Hawley, by their Next Friend, C. E. Hawley, John B. Smith, L. M. Smith and Lovisa S. Davenport.

| | |
|---|---|
| 177 | 387 |
| p206 | [1]127 |
| 177 | 387 |
| p 26 SC | 141 |
| 177 | 387 |
| 213 | [2] 34 |
| 177 | 387 |
| 215 | [2]329 |
| 177 | 387 |
| 222 | [2]388 |
| 222 | [2]389 |

*Mines and mining—Coal lease—Construction of lease.*

In construing a coal lease the mere use of technical words or phrases which have a definite legal signification cannot be allowed to defeat the contrary intention of the parties, if that intention be manifest from the whole contract. Thus the words, demise, lease, mine let, lessors and lessees, and like words specially appropriate to a contract between the owner and tenant for years have no bearing if the contract is, in fact, not a lease, but a sale of coal in place.

*Mines and mining—Sale of coal in place—Coal lease—Minimum rental.*

Under a coal lease the lessee was to have and to hold "all the coal upon and under " the premises of the lessors " for and until such time as all the merchantable anthracite coal shall have been mined and removed." The lessee covenanted to pay to the owner 25 cents per ton for every ton mined, the " rent or royalty to be paid quarterly." It was further provided as follows : " And the said party of the second part, its successors and assigns, whether coal be mined or not, shall pay to the said party of the first part, their executors, administrators and assigns, in the proportions aforesaid, an annual minimum rental of not less than $4,000, payable in quarterly installments on the said first days of April, July, October and January. And if the said party of the second part, its successors and assigns, shall fail in any year to mine coal to amount to the said minimum, which it or they shall have paid, the deficiency may be made up in any subsequent year during the time of this lease without any payment therefor. And

388 LEHIGH COAL CO., Appellant, *v.* WRIGHT et al.

should the breaker of the said party of the second part, its successors and assigns, be destroyed by fire or other unavoidable cause, the rent may be postponed for the time which may be necessary to erect a new breaker, not however to exceed three months." *Held*, (1) that the lease constituted a sale of coal in place; (2) that as long as the lessee retained possession of the premises it was bound to pay the minimum rental, although in previous years it had paid sums amounting in the aggregate to more than the value of all the coal at the rate of 25 cents per ton; (3) that upon the lessee's failure to pay the minimum rental the owners had a right to forfeit the lease.

Argued April 16, 1895. Reargued April 13, 1896. Appeal, No. 262, Jan. T., 1895, by plaintiff, from decree of C. P. Luzerne Co., June T., 1889, No. 4, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.; and also on reargument, DEAN and FELL, JJ. Affirmed. WILLIAMS and GREEN, JJ., dissent.

Bill in equity for an injunction to restrain a forfeiture of a coal lease.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree dismissing bill.

*Henry W. Palmer* and *Samuel Dickson*, with them *Andrew H. McClintock*, for appellant.—The lease is a sale of coal, the purchase money being payable in installments, but nevertheless it is a sale. This has been decided in a number of cases from Sanderson v. City of Scranton, 105 Pa. 469, down to Lazarus's Estate, 145 Pa. 1. The purchase money has been paid and more than paid—why should we not be entitled to take out what belongs to us without further payment and without having our property taken away from us? Muhlenberg v. Henning, 19 W. N. C. 370; Kemble Iron Co. v. Scott, 15 W. N. C. 220. The payment of $4,000 annually is in the nature of a consideration and not of a condition: Cook v. Trimble, 9 Watts, 16; Bortz v. Bortz, 48 Pa. 382.

The settled determination of this court to ascertain the real truth of the transaction, and to carry out the actual and legal intention of the parties, has been shown in every case, without the slightest regard to the form of the instrument: Montooth v. Gamble, 123 Pa. 240; Fairchild v. Furnace Co., 128 Pa. 485;

Johnstown Iron Co. v. Cambria Iron Co., 32 Pa. 241; Harlan
v. Lehigh Coal & Navigation Co., 35 Pa. 287; Funk v. Halde-
man, 53 Pa. 229; Stoughton's App., 88 Pa. 198; Scranton v.
Phillips, 94 Pa. 15; Palmer v. Edwards, 1 Doug. 187; Hope's
App., 29 W. N. C. 365; Fairchild v. Fairchild, 9 Atl. Rep.
255; Kingsley v. Hillside Coal & Iron Co., 144 Pa. 613; Laz-
arus's Est., 145 Pa. 613; Plummer v. Hillside Coal & Iron Co.,
160 Pa. 483; Lillibridge v. Coal Co., 143 Pa. 293; Chartiers
Coal Co. v. Mellon, 152 Pa. 286.

*John G. Johnson*, with him *Henry A. Fuller* and *George R.
Bedford*, for appellee.—If payment for all of the minable coal
relieves from minimum and prevents forfeiture, the lessors might
be perpetually excluded from repossession of the premises with-
out any compensation for such exclusion. The very purpose
of a minimum to compel prompt mining or restoration would be
completely nullified: Axford v. Thomas, 160 Pa. 8; McSwin-
ney, Law of Mines, etc., 215; Bute v. Thompson, 13 M. & W.
487; Mollors v. Duke of Devonshire, 16 Beavan, 252; Phillips
v. Jones, 9 Simons, 519; King v. Bedworth, 8 East, 388.

But this sale of coal is not the ordinary contract of sale. A
vital distinction exists between them. In the ordinary sale,
there is nothing in the transaction except a price paid and pos-
session taken of a fixed tenement; but in this sale of coal, the
coal must be removed. There is more than a mere sale of coal.

The intention of the parties as expressed in the contract can-
not be affected or defeated by the doctrine of a sale: Woodward
v. D., L. & W. R. R., 121 Pa. 344; Mansfield Co. v. Mellon,
152 Pa. 286. Express authority rules the exact point in favor
of the defendants: Buhl v. Thompson, 3 Penny. 267; Timlin
v. Brown, 158 Pa. 606.

OPINION BY MR. JUSTICE DEAN, October 5, 1896:

The plaintiff operated coal mines upon a large body of land
in Luzerne county, adjoining a tract of seventy-five acres owned
by these defendants. Before the 29th of November, 1879, the
plaintiff held a lease of the coal on this tract from the ancestor
of defendants. By agreement of the parties on that day, how-
ever, the old contract was canceled and a new one entered into,
which leased to plaintiff "All the coal upon and under" the

seventy-five acre tract, to have and to hold the premises from 1st of January, 1879, "for and until such time as all the merchantable anthracite coal shall have been mined and removed." By section 1 of the contract, plaintiff covenanted to pay to defendants 25 cents per ton for every ton of two thousand two hundred and forty pounds of coal mined; the "rent or royalty" to be paid quarterly. By section 2, the most important part of the contract, plaintiff covenanted as follows:

"And the said party of the second part, its successors and assigns, whether coal be mined or not, shall pay to the said party of the first part, their executors, administrators and assigns, in the proportions aforesaid, an annual minimum rental of not less than four thousand dollars, payable in quarterly instalments on the said first days of April, July, October and January. And if the said party of the second part, its successors and assigns, shall fail in any year to mine coal to amount to the said minimum, which it or they shall have paid, the deficiency may be made up in any subsequent year during the time of this lease without any payment therefor. And should the breaker of the said party of the second part, its successors and assigns, be destroyed by fire or other unavoidable cause, the rent may be postponed for the time which may be necessary to erect a new breaker, not however to exceed three months."

By section 11, it was agreed that, on default of any quarterly payment, all the right of plaintiff under the lease should be forfeited at the option of the defendants; or they might issue a landlord's warrant and distrain for arrears of rent; or if forfeited, then by authority of a power of attorney thereby given, judgment in ejectment might be confessed and possession taken of the premises.

The quarterly payments of the minimum annual rental, that is, the one fourth of $4,000, were regularly made up until 1st of July, 1888, when plaintiff notified the defendants that the minimum rental they had received up to that date had overpaid them for all the coal in the tract, not only for what had been mined, but for what remained in place, computing its value at 25 cents per ton, and therefore, no further payments would be made; thereupon, May 29, 1889, this bill was filed, to restrain defendants from enforcing at law the forfeiture of the lease and further, to restrain them from re-entry under the power of at-

torney to confess judgment. The object of both parties was to have their rights determined by a judicial construction of their contract. The sole issue raised by bill and answer is, whether plaintiff has paid all that it, by its contract, stipulated it would pay for the coal.

By the illness and death of two masters appointed by the court, the event of the issue in the court below was delayed; then, on a former appeal to this court, after full consideration, there were developed such differences of opinion on the question at issue, as to call for a reargument before the full bench, which was accordingly had; so that now, after elaborate argument by the able counsel concerned, and with the report of the master and opinion of the learned court below, we proceed to enter final judgment.

The learned master finds as facts, that: 1. Up to July, 1888, the plaintiff had mined seventy-nine thousand seven hundred and forty-four tons, nine hundred weight of coal. 2. That up to that time, it had paid for one hundred and fifty-four thousand four hundred and thirty-one tons. 3. That, computing the coal actually mined at twenty-five cents per ton, there was then an overpayment of $12,000. 4. That, estimating the quantity of coal yet in place by the methods which determine it with approximate accuracy, this $12,000 more than paid for all that remained when this bill was filed.

He concluded that a forfeiture of the lease would be unconscionable; that the true construction of the contract made it a sale in fee simple of the coal in place at the price of 25 cents per ton, to be paid in annual installments of $4,000; that as by the annual installments of purchase money already paid, plaintiff had paid more than (at 25 cents a ton) for every ton of coal in and out of the mine, no more money was payable to defendants, and there was consequently no right to forfeiture when they proposed to exercise it; further, that plaintiff, under the contract, was entitled to a reasonable time to remove the remaining coal, which time was not yet up, and which he suggested should be fixed as January 1, 1895, until which time defendants should be restrained from re-entering.

The court below concurred in the master's findings of facts, and in his opinion that the contract was a sale of the coal in place, but dissented from his conclusion of law that the amount

of purchase money was determined solely by the royalty of 25 cents per ton; on the contrary, he held that the $4,000, annual minimum to be paid while plaintiff was in possession, fixed the amount of purchase money; as they were in default under this covenant, defendants' right to forfeit was clear, and the bill was therefore dismissed.

As preliminary to a construction of this contract we remark that the mere use of technical words or phrases which have a definite legal signification, cannot be allowed to defeat the contrary intention of the parties, if that intention be manifest from the whole contract: Caldwell v. Fulton, 31 Pa. 475; Funk v. Haldeman, 53 Pa. 229. So that the words, demise, lease, mine-let, lessors and lessees, and like words specially appropriate to a contract between the owner and tenant for years have no bearing if the contract is in fact not a lease, as this is not. If the owner of a tract of land grant the right for a fixed term to mine coal, ore or other mineral, or to cut wood or timber, to be paid for at so much per ton, per cord or per thousand, as mined or removed during the term, the intention of the parties to such a contract might with some approach to accuracy, have been expressed by the use of these technical words; but they give us no aid in the construction of this one. We must ascertain the intention here, in determining whether the exercise of the right to forfeit is sustainable, from the whole contract, the subject of it, the surroundings and the purpose of it.

When this contract was entered into, the defendants were the owners of the coal under seventy-five acres of land; the coal was in place; they wanted to get and enjoy the value of it; if plaintiff had wanted to buy and indefinitely leave it in place for future operation, each party would have dealt on the basis of a lump sum for the coal under the tract, or at so much per acre for it, and would have arranged for payment, just as they would have done if the subject of the contract had been land. Each might, as preliminary to the contract, have sought by surveys to ascertain the proximate quantity in place, and thus have fixed in their judgment the value, but the number of tons and value per ton would have been no express part of the written contract; a round sum for the whole or per acre would have represented the price the sellers were willing to accept and the buyers to give. But although the contract was a sale of the

coal in place, they did not bargain on the basis of a lump sum. Why? Because the plaintiff was not a purchaser of coal or coal lands to hold for appreciation in price, in view of a future sale for a round sum or a lease to others at a profit; it was an operator who desired to mine and market the coal at a profit, intending to operate immediately; therefore, as in all such operations, it is more convenient to pay while the operation is going on, for it involves an expenditure of far less capital, consequently a less fixed charge. Say, it had paid down for this coal what approximately it did pay in the nine years between the date of the contract and filing the bill, at simple interest, it would have been at an annual expense on the $36,000 of $2,160. This could be avoided only by payments as the mining progressed, and this it endeavored to stipulate for in the bargain. It was the adoption of this method of payment, alone, that prompted the expression of value of 25 cents per ton to be paid when mined, as provided in section 1. But the owners' interest now clashed with the operators', for he once in possession with right to all the coal in the tract, might indefinitely prolong such possession; fluctuations in the market, wage disputes and strikes, accidents to machinery and like causes might render rapid mining unprofitable to the operator; and rate of profit would depend on circumstances not foreseeable, and the rate of output would depend on rate of profit.

The owners' enjoyment of the value of their property would largely depend on receiving that value soon; if the payments, by reason of slow mining, were stretched into the future, they would receive far less than if made within a period of two, three or even five years, and all this coal could easily be mined within that time. Both parties assumed the value of the coal in place to be 25 cents per ton, and this value, defendants would have proximately got if it had been mined diligently; but, if, on account of conditions of market, charges for transportation or price of labor, it paid plaintiff better to mine very slowly, defendants would not receive nearly that value. For example, take the $4,000 paid for the sixteen thousand tons mined the ninth year; if the sixteen thousand tons were worth 25 cents per ton at date of contract, then defendants had lost nine years' interest, or $2,160; deducting this from the $4,000, left only $1,840, equal only to 11½ cents per ton·by reason of the long de-

ferred payment. The hardship of the bargain by the happening of this very contingency the owners sought to guard against by two distinct methods of fixing the purchasing price; one, 25 cents per ton, to be paid as mined; and this is all plaintiff would have paid if it had mined with diligence; but there was another method; if for any reason, it chose to retain possession, and not mine diligently, then defendants had provided for this by exacting a fixed annual income of $4,000; see section 2: "And said party of the second part . . . . whether coal be mined or not, shall pay to the said party of the first part . . . . in the proportions aforesaid, an annual minimum rental of not less than four thousand dollars." This was a plain bargain; in no sense unconscionable at the time it was made. The owners exact positive stipulations as to price of that which they owned, in view of future contingencies; in no case is the plaintiff to pay less than 25 cents per ton; but if it choose to not diligently carry on the work of mining, so that it takes out less than sixteen thousand tons annually, then it shall pay $4,000 annually as long as it retains possession of the premises to mine coal under the contract. The hardness of the bargain is, it seems to us, assumed by the able master on insufficient grounds. He adopts the price per ton as mined as the one value of the coal; not noting that if it paid plaintiff better to not mine, or to mine it very slowly, it was a serious loss in price to the owners, which they guarded against. Whether on the whole, as a business venture, the operator gained or lost by the second method would depend on the soundness of its judgment; but if it lost by exercising its judgment, that does not prove the bargain a hard one.

The provision, that if there were a failure to mine coal any one year up to the minimum the deficiency should be made up any subsequent year, in no respect conflicts with the construction here given. That only means, if in one year, say but eight thousand tons had been mined and $4,000 paid, then the next, or a subsequent year, if plaintiff mined, say twenty-four thousand, the $2,000 might be credited on the excess beyond sixteen thousand tons. The plaintiff is given the privilege of recouping the excess of payment above what it has mined in a preceding year, by an excess of coal in a subsequent year; there is no intimation in the language employed that there is to be any reduction or

change in the annual minimum payment of $4,000 while plaintiff is in possession.   There is just one provision for suspension of the annual payment, and it is embodied in this section; it is "should the breaker . . . . be destroyed by fire or other unavoidable cause the rent may be postponed for the time which may be necessary to erect a new breaker, not, however, to exceed three months."   This is the only contingency which can work a suspension of any part of the $4,000 rentals; and as there is the expression of one contingency alone, the silence of the contract as to any other is significant of an intention to exclude all others.   *Expressio unius exclusio alterius.*

The possession of the premises, with the right to timber or other material on the surface, was granted to plaintiff along with the coal under the surface.   The position of appellant is, that having already paid for more coal than the tract originally contained at the rate of twenty-five cents per ton, it has the right to cease payment and retain possession of the premises, with these rights on the surface, until all the coal be mined. As already noticed, this is not our construction of the contract. The intention of the parties to every contract of this kind must determine their rights and remedies.   In the authorities cited there is no real conflict; the difference in the surroundings of the parties at the date of the contract and a distinction in the subject compel different constructions to give effect to the intention; the language of no two of them is the same ; the covenants are different.   It is useless to go over them, because, to be in point, they should be in verbis ipsissimis concerning the same subject and the parties in the same situation.   On one proposition they all agree, that in contracts like unto this they must be construed as a sale of the coal or other mineral in place. The determinination of the price as well as the remedies for the enforcement of the contracts are as different as the minds of the parties.   And while we do not go to the length the English cases do in enforcing payment of the purchase money where there is a total failure of consideration, yet where the consideration has not failed, as here, the law of the contract which the parties have made for themselves is the law of the land.

The appeal is dismissed and decree affirmed.

DISSENTING OPINION BY JUSTICES WILLIAMS AND GREEN, October 5, 1896.

We dissent from this judgment because we regard the contract as a simple sale of coal in place to be paid for by the ton. The right to mine and remove it was an incident to the sale. When all the coal in the tract was paid for the purchase money was extinguished. If the company remained in possession for an unreasonable time in closing up its mining operations after the coal had been fully paid for it was liable to the owners of the land for such occupation, and subject to an action for the recovery of the possession. It is not liable to pay $4,000 per year for coal that has no existence.