## In re KEYSTONE COAL CO.

(District Court, W. D. Pennsylvania. July 26, 1901.)

### No. 1,013.

BANKRUPTCY—MINING CORPORATION—INVOLUNTARY. PETITION—JURISDICTION.

A corporation organized under the act of assembly of Pennsylvania approved April 29, 1874 (section 2, subsec. 18), authorizing incorporation for the purpose of carrying on mechanical, manufacturing, mining, and quarrying operations, and which is engaged, as its principal business, in the mining of coal, is not a "corporation engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits," within the contemplation of the bankruptcy act. Hence the district court has no jurisdiction to adjudge such a corporation bankrupt on an involuntary petition.

Willard, Warren & Knapp and M. W. Acheson, Jr., for petitioning creditors.

S. J. Strauss and O. H. Rosenbaum, for respondent.

BUFFINGTON, District Judge. Certain of its creditors filed a petition in bankruptcy, praying the Keystone Coal Company be adjudged bankrupt. By proper plea the company set up that it was not a "corporation engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits," and denied the jurisdiction of the court to adjudicate it bankrupt. Thereafter an order was made appointing the referee a commissioner to take testimony and report the facts and law. In pursuance of this reference, the commissioner took testimony, and filed a report, in which he recommended a decree be made adjudging the company bankrupt. The ground for his suggestion is that "this coal company bought a portion of the earth by the ton, converted it into a merchantable article, and sold it, with a view to profit. In my opinion, this constituted trading and engaging in a mercantile pursuit." The question here involved is jurisdictional. Unless this court is vested with jurisdiction over this corporation by statutory grant, none exists. The Keystone Coal Company was duly incorporated May 16, 1886, under the act of assembly of Pennsylvania approved April 29, 1874 (section 2, class 2, subd. 18), providing for the carrying on of mechanical, manufacturing, mining, and quarrying operations. At that time there was no statutory provision in Pennsylvania for the incorporation of merchants and dealers. Com. v. Manufacturing Co., 156 Pa. 310, 27 Atl. 13. Under the bankrupt law of 1867, jurisdiction over corporations was conferred in broad terms: "The provisions of this act shall apply to all moneyed business or commercial corporations and joint stock companies." This clause was accorded such broad scope by the courts. In Winter v. Railway Co., 7 N. B. R. 289, Fed. Cas. No. 17,890, it was said:

"The first ground of demurrer is that the defendant is not a 'moneyed business or commercial corporation,' within the meaning of the bankrupt act, and hence the provisions of that act do not apply to it. 'The provisions of this act shall apply to moneyed business or commercial corporations and joint-stock companies.' Section 37. Except as otherwise provided, corporations are within the bankrupt act (section 48), and in my judgment the purpose of congress in the use of the language above quoted from section 37 was to include all corporations of a private nature, organized for pecuniary profit. Instead of undertaking to enumerate by name or description the various kinds of such corporations, language broad enough to include them, and which would exclude corporations of a public, civil, or municipal character, as well as those organized purely and strictly for religious, charitable, educational, and like purposes, was employed."

This leading and important case was cited and approved by the supreme court in Railroad Co. v. Delamore, 114 U. S. 501, 5 Sup. Ct. 1009, 29 L. Ed. 244. Presumably with knowledge of this broad grant of jurisdiction over corporations under the former law, congress passed the present law, in which there is not alone no broad grant of jurisdiction over corporations, but in which, in the line of what was above expressed, congress does enumerate, by name or description, the various kinds of such corporations subjected to the jurisdiction of the court. There being a manifest purpose to abridge the prior broad jurisdiction over corporations, we are not now warranted in enlarging by judicial construction where congress evidenced its purpose to restrict. Without unduly broadening or unduly restricting the class of corporations named, we are of opinion the section should be construed according to the fair import of its terms. The question before us is, was the Keystone Coal Company engaged principally in trading or mercantile pursuits? Bearing in mind the purpose of congress to restrict the scope of corporate jurisdictional control, noting the fact that certain corporations, to wit, manufacturing, printing, and publishing, are specified, can it be said that a corporation carrying on coal mining is, in the fair import of those terms, to be adjudged to be engaged principally in trading or mercantile pursuits? It must be noted that the mere fact that a corporation buys and sells is not per se sufficient to bring it under that class. A manufacturing corporation buys something,—for example, iron, steel, glass, cloth, wood,—manufactures it into a merchantable article, and sells it. A printing corporation buys paper, prints it, and sells it. A publishing corporation buys paper, materials for binding, publishes books, and sells them. Indeed, none of these corporations can carry out their corporate purposes without buying and selling. Initial purchase and eventual sale, meanwhile subjecting the articles to that which is the main object of corporate existence, viz. manufacturing, printing, and publishing, are the means by which such corporations exist; yet with buying and selling as a necessary incident to that in which they were principally engaged, viz. manufacturing, printing, and publishing. Congress, by specially naming them, indicated they were not covered by the term "corporations engaged principally in trading and mercantile pursuits." If, then, the act of buying and selling, as a mere incident to that in which the corporation is principally engaged, does not in the case of manufacturing, printing, and publishing corporations stamp them as engaged principally in trading or mercantile pursuits, why should

the incidents of buying and selling by a coal-mining company have such effect? Manufacturing, printing, and publishing corporations were named in order to confer bankrupt jurisdiction, and because congress wished to confer jurisdiction. Mining companies were not named, and the fair import of the terms used cannot be stretched to include them. Purchase and sale are per se incidents of mining. The mining of coal by a corporation necessarily involves the purchase of coal land and the sale of product. It must obtain coal land to mine, and it must sell its product in order to carry on its business, but all the same its business and pursuit is that of mining. That is shown by its breaker, pits, tracks, crushers, fans, pumps, cars, and, above all, its miners. Its principal pursuit can only be carried on in mines and by mining. Obviously its furnishing to and charging its men for powder, picks, and supplies indispensable to its carrying on mining, instead of lessening, rather tends to emphasize, its character as that of a mining company. The referee, however, has sought to make it principally engaged in trading or mercantile pursuits by finding that mining under a lease, in which the price of the coal was fixed and paid for when it was mined, constituted a continuous series of purchases of coal, which, coupled with subsequent sale of the coal, made the mining company principally engaged in trading or mercantile pursuits. Without discussing whether these assumed premises warranted the conclusion drawn, we are of opinion that the assumption of such premises is not warranted by the decisions of our Pennsylvania courts. The substance of those decisions is that under mining leases of the general character of those before us the company was vested with the legal title and ownership of the coal by the lease. It became owner of the coal upon execution of the lease. Thereafter the coal was its real estate, and, as such, subject to lien and taxation as its property. Payment for the coal was deferred in yearly minimum installments, or until mined, but such facts did not constitute fresh, continuous purchases. The lessee became the owner when the lease was made. Caldwell v. Fulton, 31 Pa. 475; In re Lazarus' Estate, 145 Pa. 1, 23 Atl. 372; Sanderson v. City of Scranton, 105 Pa. 469; Coal Co. v. Wright, 177 Pa. 387, 35 Atl. 919. The company bought no mined coal from others, and, apart from its own coal thus mined, it sold none. Finding, as we do, that the Keystone Coal Company was not engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits, this court has no jurisdiction to declare it bankrupt. Its plea to the jurisdiction of the court is sustained. Let an order be drawn dismissing this bill, at the cost of the petitioners.