In re CHESAPEAKE OYSTER & FISH CO.

(District Court, D. Colorado. January 2, 1902.)

INVOLUNTARY BANKRUPTCY—SALOONS AND RESTAURANTS.

A corporation engaged in running a saloon and restaurant is not a "mercantile" or "trading" corporation, within Bankr. Act, § 4b, describing corporations which may be adjudged involuntary bankrupts, and is not subject to the provisions of the act.[1]

---

[1] What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.

Petition for Involuntary Bankruptcy.

Bicksler, McLean & Bennett and S. S. Large, for petitioning creditors.

T. J. O'Donnell, Milton Smith, and Smith & Robinson, for the Chesapeake Oyster & Fish Company.

HALLETT, District Judge (orally). The amended petition reads as follows in respect to the business of the corporation:

"The Chesapeake Oyster and Fish Company, a Colorado corporation, is a mercantile and trading corporation engaged in the business of buying, selling, and trading in liquors, including wine, beer, whisky, and other beverages, both intoxicating and not intoxicating, and in the operation of a restaurant."

In respect to the business of dealing in liquors, it is not stated that it is a wholesale dealer, and, from the language of counsel on both sides in the discussion of the questions arising upon the argument, I suppose, in the absence of an allegation that it is a wholesale dealer, we are at liberty to accept the statement of counsel that it keeps a saloon in connection with a restaurant; that is, a place where liquors are sold in small quantities and consumed upon the premises. If we may take the allegations together, that the business is that of a saloon and restaurant, it is most like the business of keeping a hotel. In a restaurant the business is the same as a hotel, except that lodgings are not furnished; guests are furnished with food in a saloon and restaurant, together with such beverages as they are inclined to take. So that there is a hotel business without the feature of lodgings, and the question under the act is whether that is a mercantile or trading pursuit. There are other terms in Bankr. Act, § 4b, describing corporations which may be subject to the provisions of the act, but these terms are used in the petition. It is stated in the petition that it is a mercantile and trading corporation, and therefore we need consider only those terms. I think that it is impossible to say that it is of that character. Ordinarily we would not speak of a hotel business or a saloon business as a mercantile or trading business.

This question as to the meaning of the words "mercantile" and "trading" is much considered in the case of In re New York & W. Water Co., 3 Am. Bankr. R. 508, 98 Fed. 711. That was a petition filed against a company engaged in supplying water to a community, and the court, after reviewing the authorities and considering at some length the meaning of the words "merchant" and "trader," used this language:

"In view of the above definitions and precedents, it seems to me a strange and unnatural use of terms to describe the ordinary business of a water supply company as a 'trading or mercantile pursuit' . In common parlance, I think such a business would never be so described; and, if only those corporations are subject to the bankrupt act that are engaged in 'trading or mercantile pursuits' in the commonly received meaning of those words, I do not see how water supply companies can fairly be held to be within the act."

Substitute in this paragraph the words "hotel company" for "water supply company," and I think the language is quite as applicable

to the case at bar as it was in the case under consideration, and here reported.

It has often been decided that a mining company is not within the terms of this act; that is to say, it is not a manufacturing, mercantile, or trading corporation. In re Elk Park Min. & Mill. Co., 4 Am. Bankr. R. 131, 101 Fed. 422, In re Woodside Coal Co., 5 Am. Bankr. R. 586, 105 Fed. 56, and In re Keystone Coal Co., 6 Am. Bankr. R. 377, 3 N. Bankr. N. 938, 109 Fed. 872, are instances of such decisions, and there are other cases to the same effect. In some one of these cases there is a suggestion which seems to be of force. It is said that mining companies, it is believed, were considered by congress in passing the act quite as much as printing and publishing companies and manufacturing companies. The latter are enumerated in the act as of the class which may be proceeded against in bankruptcy. Mining companies are not mentioned; therefore the conclusion is very strong that congress did not intend to bring them within the terms of the act. The same may be said of hotel companies. The country is full of hotel companies. If congress had intended to bring them within the terms of the act, they certainly would have been mentioned; and, as to the saloons, there can be no reason for doubt as to them. Certainly congress knew something about them, and if it was intended that they should have the benefit of the act they would have been mentioned.

There are two cases which may support this petition,—one is In re San Gabriel Sanatorium Co., 2 Am. Bankr. R. 408, 95 Fed. 271; and another is In re Morton Boarding Stables, 5 Am. Bankr. R. 763, 108 Fed. 791. In the first case (that in 2 Am. Bankr. R. 408, 95 Fed. 271), the business of the corporation was the keeping of a sanatorium where the sick were cared for. That so much resembles a hotel that we may say it falls within the same category as restaurants. The other (the Morton Boarding Stables) was that of keeping a livery stable, and the care of beasts is not so very different from the care of men in a hotel,—there is some difference, not always very great, in respect to the provender that is provided for each, but the business is carried on in much the same way. I regard these cases as not sound in reason, nor in the result reached; therefore I feel at liberty to depart from them. I think the petition states no case against the Chesapeake Oyster & Fish Company; in other words, the company is not subject to the provisions of the act of congress, and therefore the petition must be dismissed.