In re NEW YORK BUILDING–LOAN BANKING CO.

(District Court, S. D. New York. January 6, 1904.)

No. 6,277.

1. BANKRUPTCY—BUILDING AND LOAN ASSOCIATIONS—ADJUDICATION.

A building and loan association organized to accumulate a fund from contributions of its members, from which loans were to be made to assist members in purchase of real estate, the profits of which business were divided among its members, is not a corporation engaged principally in trading or mercantile pursuits, and therefore cannot be adjudged an involuntary bankrupt, within Bankr. Act 1898, limiting corporations which may be forced into bankruptcy to such as are engaged principally in manufacturing, trading, printing, publishing, mining, or mercantile pursuits.

In Bankruptcy.

McCloskey, Belfer & Flash, for petitioning creditors.

Eustace & Eustace, for New York Building-Loan Banking Co.

Sheehan & Collins, for the People of the State of New York, a creditor.

Frank M. Patterson, for Joseph Trapnell, Jr., an intervening creditor.

HOLT, District Judge. This is a proceeding to have the New York Building-Loan Banking Company adjudged an involuntary bankrupt. The petition alleges that it is a corporation principally engaged in trading or mercantile pursuits, and the answer denies this allegation. The alleged bankrupt was organized under chapter 122, p. 234, of the New York Laws of 1851, authorizing the incorporation of building, mutual loan, and accumulating fund associations, and the acts amendatory thereof, and has carried on the usual business of a building and loan association. The object of its incorporation, as stated in its by-laws, and the actual business which it has done has been, in substance, to accumulate a fund from the contributions of its own members, from which loans were made to some of its members to assist them in the purchase of real estate, the profits of the business being divided among all its members. The company at times purchased real estate from third parties, but only when a member wished to ultimately purchase such real estate, and upon an arrangement that the title should be transferred to such member as soon as he completed the payments for it. No real estate was sold to third parties, and the entire business of the company was, in substance, confined to transactions for the mutual benefit of the members exclusively. The corporation did not deal with goods or merchandise in any way, and neither bought nor sold real estate to parties not connected with the company, in the manner in which ordinary traders or merchants deal with commodities. In determining the question involved it is not necessary to consider the English decisions or the decisions under the earlier American bankrupt acts. The authorities under the present

¶ 1. What persons are subject to bankruptcy laws, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.

act seem decisive. They hold; in substance, that the intention of the present bankrupt act; the provisions of which are much more restrictive than those of the earlier bankrupt acts, was to exclude from the operation of the act banks, railroad, telegraph and express companies, and all corporations except those mentioned in the act. By the provisions of the present act the corporations which can be put into involuntary bankruptcy are those "engaged principally in manufacturing, trading, printing, publishing, mining, or mercantile pursuits." These terms are to be taken in their natural and usual meaning, and any corporation which does not come within such meaning cannot be put into bankruptcy. I think that an ordinary building and loan association is not a corporation which is included in the provision quoted. Admittedly, the only kind of corporation described in the act which it can be claimed to be is one engaged principally in either manufacturing, trading, or mercantile pursuits. I think that it does not come within any of these descriptions. No direct decision that a building and loan association cannot be put into bankruptcy has been brought to my attention, but the great weight of authority in analogous cases supports the view that they cannot. The following classes of corporations, for instance, have been held not to be subject to the present bankrupt act: A mutual fire insurance company (Re Cameron Town Mutual Fire, etc., Insurance Company [D. C.] 96 Fed. 756); a tontine insurance company (Re Tontine Surety Co. [D. C.] 116 Fed. 401); a company organized to buy and sell stocks, bonds, and securities (Re Surety Guarantee & Trust Company, 121 Fed. 73, 56 C. C. A. 654); a common carrier of persons and property (Re Philadelphia, etc., Company [D. C.] 114 Fed. 403; Re H. J. Quimby Freight Forwarding Company [D. C.] 121 Fed. 139); a water supply company (Re New York & Westchester Water Company [D. C.] 98 Fed. 711); a company organized to give theatrical performances (Re Oriental Society [D. C.] 104 Fed. 975); a company carrying on the business of a restaurant and saloon (Re Chesapeake Oyster & Fish Company [D. C.] 112 Fed. 960); a social club (Re Fulton Club [D. C.] 113 Fed. 997); a public circulating library (Re Parmelee Library, 120 Fed. 235, 56 C. C. A. 583); a laundry company (Re White Star Laundry Company [D. C.] 117 Fed. 570). There are three reported cases which do not appear to conform to the general trend of authority. In Re Mutual Mercantile Agency (D. C.) 111 Fed. 152, it was held that a company conducting the business of a mercantile agency was principally engaged in trading, and could, therefore, be put into bankruptcy. In that case the alleged bankrupt consented in writing to be adjudged a bankrupt, the objection being taken by an intervening creditor, and the point under consideration was very briefly considered, other points involved receiving much more attention. In Re San Gabriel Sanitorium Company (D. C.) 95 Fed. 271, it was held that a corporation maintaining a private hospital for consumptives was a trader; and in Re Morton Boarding Stables (D. C.) 108 Fed. 791, it was held that a corporation conducting boarding stables was a trader within the meaning of the act. These two cases have been explicitly disapproved in several subsequent decisions. Re White Star Laundry Company (D. C.) 117 Fed. 570;

Re Surety Guarantee & Trust Company, 121 Fed. 73, 56 C. C. A. 654. I think some weight also is to be given to the fact that by the law of New York building and loan associations are ranked as moneyed corporations, and are made subject to the supervision of the banking department, the law relating to them having been in the last revision included in the general banking law.   Undoubtedly, a building and loan association is not a bank, or a savings bank, and does not conduct a banking business.   It constitutes a corporation in a class by itself, carrying on a business which is peculiar and distinct from all other corporations.   But the fact that the state of New York regards it as a moneyed corporation, performing functions somewhat analogous to those performed by savings banks, and therefore to be included in the same general department and to be subjected to the same general supervision, is, in my opinion, entitled to much consideration in determining the general character of the corporation.

My conclusion is that the petition should be dismissed on the merits, with costs.