**PAOPAOAILUA, LAFOA'I BROWN, FIAPAPALAGI and TOAMALAMA TUFONO, Objectors**

v.

**JAMES M. BETHAM, MERE T. BETHAM, THE BANK OF AMERICAN SAMOA and KISI P. TUFONO, Applicants**

No. 218-1965

High Court of American Samoa

Civil Jurisdiction, Trial Division

November 30, 1965

Lolo, Counsel for James and Mere Betham.

Sgt. Brown, Counsel for Paopaoailua, Lafoa'i Brown and Toamalama.

OPINION OF THE COURT

ROEL, *Associate Justice.*

This hearing grew out of two objections made to the application to register a certain instrument with the Registrar of Titles. The notice posted in front of the Adminis-

tration Building by the Registrar of Titles from August 18, 1965 to September 24, 1965 identified the instrument sought to be recorded as a Separation of Structure Agreement, and names James M. Betham, Mere T. Betham, and Bank of American Samoa as the applicants for the recordation of said instrument.

On August 20, 1965, Paopaoailua, Lafoa'i Brown and Fiapapalagi filed an objection which reads as follows:

"We, the undersigned are members of Tufono Family of Fagatogo, American Samoa do hereby file and [sic] objection on the Lease made by and between Tufono as one party and Mr. & Mrs. Mere Betham as the other party on the ground that we have better rights to this land than these two parties."

On September 17, 1965, a second objection was filed by Toamalama Tufono. It reads as follows:

"I, Toamalama Tufono hereby files an objection to the lease between James M. Betham, Mere T. Betham and the Bank of American Samoa and Tufono which lease is now on file with the Office of the Registrar of Titles. I file this objection for myself, and for the heirs of Tufono Selusi who is my father.

"The instrument on file is both a lease and separation agreement, the two should be separated.

"In paragraph Ten (x) of the lease, it treats the instrument as a separation agreement and there it does not say how long the Tufono Family should be bind by this agreement. Further I object to the recording of this instrument because it does not say whether the parties to the separation are members of the Tufono Family.

"I am forwarding a copy of this to the Land Commission where I ask to be heard and I intend to prove to the Commission of how our family communal land will be improperly alienated if this lease is approved."

We will first consider the nature of the instrument which is now in question and the subject of this litigation. Said instrument is on file herein and part of the record.

Though the instrument is titled "Lease" we hold it is not a lease. It is a hybrid between a Separation of

706

Structure Agreement and a conditional, negative or contingent lease. It could also be interpreted as a cross between a Separation of Structure Agreement and a contingent lease or a chattel mortgage. The conditional, negative or contingent lease is operative, under the instrument in question, only upon the failure on the part of Mr. and Mrs. Betham to make payments to the Bank of American Samoa on a loan of $12,500. which is to be used to build a house upon the land in question. There is no time limit or rental agreement set out in the instrument.

The last paragraph of the instrument reads as follows:

"This agreement is made in accordance with the provisions of Chapter 12.02 of the Code of American Samoa (Section 12.0201) and shall be binding upon the parties hereto and his heirs, devises, legatees, legal representatives and assigns as soon as it is recorded in accordance with the law."

For the purposes of arriving at a decision on this matter, the Court will consider the instrument in question as creating two separate relationships between the parties thereto. We believe that the instrument reflects a separation of structure agreement between James and Mere Betham as owners of the house to be constructed on the land in question and Kisi T. Tufono, matai of the Tufono Family as the owner of the land.

The second relationship reflected in the instrument is a chattel mortgage by James and Mere Betham on the house to be constructed in favor of the Bank of American Samoa to secure a loan obtained by the Bethams from the Bank. The fact that the instrument is titled a lease or gives the Bank the right to sub-lease the house in case of default by the Bethams does not change the fact that all the Bank has is a chattel mortgage. Under the instrument in question the Bank acquires no interest whatsoever in the land. There is no alienation of land or interest thereon contemplated in the agreement between the Bethams and the Bank.

707

"A paper cannot be considered as a 'lease' where it does not identify the premises or state when the term is to begin or upon what dates the rent is payable." (*Huntz v. Mohrenholz*, 88 N.Y.S. 1002—W & P, Vol. 24, p. 413.)

"No particular words are necessary to create a 'lease' but whatever is sufficient to show that one party shall divest himself of possession and the other party shall come into it for a determinate time and for a fixed rental amount to a lease." (*Metler v. Gordon*, 129 N.E. 809—W & P, Vol. 24, p. 466.)

"So the words 'demise', 'lease', 'lessors', 'lessees', and like words, specially appropriate to a contract between the owner and tenant for years, have no bearing, if the contract is in fact not a lease." (*Lehigh & Wilkes-Barre Coal Co. v. Wright*, 177 Pa. 387—W & P, Vol. 24, p. 466.)

## Section 12.0201 of the Code of American Samoa, 1961 Edition, referred to in the last paragraph of the instrument in question reads as follows:

"Section 12.0201—Agreement: The matai in charge of communal lands belonging to his family or the male members of the family owning and residing on communal lands, as the case may be, or the owner of individually owned lands or freehold lands, shall have the power and authority, as hereinafter limited, to agree with any person that any structure now existing or hereinafter erected on such lands shall not be or become a part of the real estate, but shall remain separate and distinct therefrom subject to ownership separate from the land, and also subject to the right of removal by the owner of the structure. Any agreement made under the authority of this section shall be reduced to writing and offered to the Registrar of Titles for recording. After the recording has been completed in accordance with the terms of this chapter and subject to the restrictions provided by law, any person may obtain a lien or encumbrance on the structure which may be foreclosed or enforced as though the structure were personal property."

Paopaoailua, Lafoa'i Brown and Fiapapalagi filed an objection on the lease made by and between Tufono as one party and Mr. and Mrs. Mere Betham as the other party "on the ground that we have better rights to this land than these two parties."

Toamalama's main objection is that the instrument is both a lease and a separation agreement and that the two should be separated, and that the instrument does not specify the period of the agreement, or whether the Bethams are members of the Tufono Family.

Everyone agreed that the land on which the Bethams' house is being constructed is the communal land of the Tufono family.

Objector Paopaoailua, who is 78 and lives in Aua testified that he objected to the agreement because it was not proper without the consent of the family. He testified that the Bethams were not blood members of the Tufono Family, even though he admitted that Mere's father, Tuiasosopo, resided on Tufono land for many years, conducted the affairs for the Tufono Family and had his children born on the land; that no one ever objected to Tuiasosopo's living on the Tufono land; that he, Paopao, brought fine mats when Tuiasosopo died on the land; that before the Tufono was selected Tuiasosopo spoke on behalf of the Tufono Family; that Tuiasosopo had been adopted by Paopao's aunt, the sister of his father. Paopaoailua further testified that the Tufono title holder had sole authority over Tufono land; that under Samoan customs the children of an adopted member of the family were recognized as family members; that Matimatu, Mere's grandfather, also lived on Tufono land; that he did not know if Tuiasosopo, Mere's father, was born on Tufono land.

Mere Betham testified that the land in question was Tufono Family land, that she had been born on said land and had lived there all her life, except while away in school; that her father always had a house on the land but was not sure if he had been born on Tufono land; that in her 33 years she had never seen Paopaoailua living in Fagatogo; that he would only come to visit with her father,

709

Tuiasosopo, and then return to Aua; that her father ran the Tufono Family affairs.

Mere testified that she had first consulted the matai Tufono for permission to build the present house on the land through her brother Mariota while Tufono was in the States; Mere further testified that the members of the family agreed to the survey of the land where the house was to be built; [sic] That the Matai Tufono, and Brown, Paopaoailua and Mariota agreed to the building of her house; that Tufono had signed the instrument purported to be the Separation of Structure Agreement, and the house was begun with the authority of the matai Tufono.

Lauvale, counsel for himself, and the rest of the objectors called Tufono as a witness. Tufono testified that he was the matai of the Tufono Family; that he had a meeting with Paopao, Lauvale and Mariota, that Mere's house was built under his, Tufono's, authority; that he had signed the instrument in question but that Mariota had promised to have the instrument in both the English and Samoan languages, but at the time of the signing only the English version was available; that he had understood all the provisions of the instrument and had signed the same, but that he still did not have the Samoan translation of the agreement; that he had not been the victim of misrepresentation if the instrument said what he understood it to say from the explanation by Mariota; that the agreement was alright if he had not been lied to; that the signature on the agreement was his; that he understood that James and Mere Betham wanted to have the agreement executed; that James and Mere Betham wanted to have the agreement executed so that they could borrow money from the bank to build the house.

In arriving at a decision we will restrict our determination to whether or not there was a separation of structure agreement between the Bethams and Kisi P. Tufono as

matai and representative of the Tufono Family, and secondly if such agreement was entered into, whether it should be recorded as a separation of structure agreement. We will not go into the matter of the "Lease" since we are holding that the instrument does not set out a lease in legal form. If the parties wish to read a lease into the agreement, they must follow the statutory prerequisite of going through the Land Commission and the Governor's Office for approval.

After considering the testimony and the evidence, the Court is of the unanimous opinion that Mere Betham is a member of the Tufono Family; that a separation of structure agreement was agreed to, and entered and executed between Kisi P. Tufono as head of the Tufono Family and Mr. and Mrs. Betham; and that said separation of structure agreement as regards Tufono and the Bethams should be recorded.

The two Samoan Judges agreed, and the writer is of the same opinion, that the agreement between Tufono and the Bethams was in good faith arrived to orally at first and then executed in writing. Whereas the main contention of the objectors—and Tufono—was that the agreement was signed by Tufono without first having a copy of the instrument in the Samoan language, nevertheless, the Court unanimously holds that at the time of the execution of the written agreement in the English language, Tufono knew what he was signing. Tufono himself testified as to what he thought he was signing from the translation of the instrument by Mariota. The interpretation of the instrument as made by Mariota and as understood and testified to by Tufono was in essence what the instrument reflected. It is clear under the statute and Samoan customs that the matai may enter into a separation agreement without consulting the members of the family, especially where all the parties to the agreement are members of the family as is the

case here. In this case we are satisfied that all the objectors, except Toamalama, knew of the agreement between Tufono and the Bethams.

One of the main objections by counsel for the objectors was that Tufono had been promised a Samoan translation of the agreement by Mariota for showing to certain members of the family and that the translation had never been delivered by Mariota. We do not think that the failure to deliver the Samoan translation voided the instrument signed by the Bethams and Tufono since we are satisfied that Tufono fully understood the contents of the instrument he signed. We believe, however, that if a translation of the instrument was promised to Tufono, the same should be made available and delivered to him.

Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. That Mere Betham is a member of the Tufono Family.

2. That a separation of structure agreement was agreed to, entered, and executed between Kisi P. Tufono as matai of the Tufono Family and James and Mere Betham, allowing the Bethams to construct a house on the communal family land of the Tufono Family under the provisions of Section 12.0201 of the Code of American Samoa, 1961 Edition.

3. That the instrument in question be recorded, only to the extent that it reflects a separation of structure agreement between Tufono and the Bethams, and as being binding only between these two parties.

4. That the Bethams deliver to Tufono a Samoan translation of the instrument in question within two weeks after the filing of this decision.

5. That Court costs in the amount of $12.50 should be paid within two weeks, as follows: $6.25 by James and Mere

Betham, $3.13 by Paopaoailua, and $3.12 by Toamalama Tufono.

Done this 30th day of November, 1965.