PERRY et al. v. REVERE RUBBER CO.

(Circuit Court, D. Massachusetts. January 7, 1898.)

No. 469.

1. PATENTS—NOVELTY AND INVENTION.
   Dowels, and couplings in the nature of dowels, being common to all the arts, the presumption of want of invention in the application of a dowel to any particular art cannot be overcome by mere proof of novelty, or by the presumption arising from the issue of a patent, or by indecisive proofs that it met a long existing want which persons skilled in the art had not been able to overcome, or by all these combined.

2. SAME—STEAM-JOINT PACKING.
   The Perry patent, No. 462,278, for a steam-joint packing, consisting of a hollow core of cotton duck or other woven fabric, a covering of elastic material, and a coupling the ends of which enter the ends of the packing, is void for want of invention.

This was a suit in equity by Edward L. Perry and others against the Revere Rubber Company for alleged infringement of letters patent No. 462,278, granted November 3, 1891, to Edward L. Perry, for a steam-joint packing.

Edwin H. Brown and Edward P. Payson, for complainants.
Henry M. Rogers and Alex. P. Browne, for defendant.

PUTNAM, Circuit Judge. The patent in issue relates to steam packing, or gaskets, and contains a single claim, as follows:

"A steam-joint packing consisting of a hollow core of cotton duck or other woven fabric, a covering of elastic material, and a coupling the ends of which enter the ends of the packing, substantially as and for the purpose specified."

Questions have arisen as to the true construction of the patent, growing mainly out of inconsistent expressions found in the specification. As originally applied for, it contained several claims, of which only one, and that in an amended form, was allowed to remain. The phraseology of the specification was not meanwhile amended, and this accounts to some extent for its confused expressions. The proceedings in the patent office show that the examiners entertained and expressed certain views as to the construction of the claim in issue, but they were not of a character to operate as an estoppel, and cannot be accepted as of any effect; and the true construction must be determined from the face of the patent.

One question relates to the nature of the coupling. This, as shown in the drawings annexed to the application, is hollow; and the specification proceeds as follows:

"In order to secure the compression of the packing more readily, the core, B, is made hollow, which also provides means for attaching the ends of the hollow coupling tube, C, to join the two ends of the packing together, after which the joint thus made is covered with a piece of suitable material. The coupling tube is preferably of metal, but other material may be used, and is made hollow to enable it to be compressed with the packing. Although it is considered materially advantageous to have the coupling in the form of a hollow tube, a solid coupling may be used, but possibly not with as good results."

In view of its connection, the word "materially," found here, preceding the word "advantageous," cannot be accepted in its proper sense; because, if so construed, the coupling which is made an

element of the claim would necessarily be hollow. The word "materially" must therefore yield to what follows it, and we must hold that the coupling which forms an element of the claim may be either hollow or solid.

The complainants maintain that, even though a solid coupling may be used, yet, by the terms of the claim as interpreted in the light of the patent, it must be compressible. By this, of course, the complainants do not intend compressible in every possible sense, but compressible in a practical sense, as applied to the purposes for which the proposed invention is intended. This proposition, however, cannot be maintained on the proper construction of the claim in connection with the specification. The specification, by saying, in effect, that the coupling may be "made hollow to enable it to be compressed with the packing," and by omitting from what follows all reference to compressibility, compels the court to construe the coupling to include a solid one, not compressible in the practical sense to which we have referred.

The parties also, in part directly and in part indirectly, have given certain limitations to the patent which it does not contain. The respondent has discussed the possibility that the core of the tubing of the patent, "consisting of cotton duck or other woven fabric," has reference to some peculiar quality of certain materials of that class; and it contends that, unless it be so, there is nothing patentable in the alleged invention, and that, if it be so, it does not infringe. But it is entirely plain that reference is impliedly made, as ordinarily in such cases, to the well-known state of the art, and that persons skilled in the art may properly be assumed by the patentee to understand the nature of the material suitable for the core. Therefore there is nothing novel so far as the component parts of the tubing are concerned.

The complainants seek to explain that there is in their patented product a certain relation between the size of the coupler and the thickness of the walls of the tubing; that the walls are too thick, and the center hole too small, to have had in anticipation tubing used as a pipe or conductor; that the patented gasket has a very small bore; and that the alleged prior tubings vary accordingly in this latter particular. All this, however, must be held to relate to the complainants' gasket as actually put on the market, because the claim contains nothing as to these particulars; and, indeed, by express terms, the specification states that the tubing may be of any shape or cross section, and of any diameter found most desirable, adding, "Such changes coming within ordinary mechanical skill."

It follows, therefore, that no function claimed for the complainants' gasket, arising out of the alleged compressibility of the coupler, or of the relative proportions of the parts, can be availed of to sustain the patent, and that the claim in issue covers a gasket formed by a combination of any size of tubing found suitable, with any kind of coupling which can enter the ends of the tubing, provided only that the covering of the tubing is of an elastic material and the core is of a fabric suitable to give strength.

The specification points out that the tubing is arranged for use as a gasket by cutting it to a suitable length according to the particular need of each case, bending it in a circle, and uniting it by a coupling which operates as a dowel. The function claimed for this product is that it answers for a tubular gasket, ready to be made of any desired size, and capable of being so coupled by the person applying the same as to be substantially jointless. It is pointed out that, inasmuch as it can be put on the market in the form of tubing of any length, ready to be cut as needed, and with it any desired number of couplings, it has been found very convenient, and has received a large sale. The complainants maintain that the patented product revolutionized the market, but the evidence in the record fails to sustain this proposition. Indeed, it appears that some of their own witnesses, who were men of large experience, had never heard of it, and were still using gaskets of other styles.

It is shown beyond doubt, and is a matter of common knowledge, that the tubing called for by the claim, as we construe it, contains nothing novel. It is also shown beyond question that the use of tubing as a gasket, by bending it in a circle, and by uniting the ends in various ways, was also much known before the alleged invention in issue. Much evidence was also offered tending to show that several persons skilled in the art, on various occasions before the alleged invention, had united the ends of elastic tubing, for use as gaskets, by inserting various materials to serve as couplings or dowels. The complainants contravene the proofs of the respondent in this particular, but they apparently rely more on the contention that the use thus proven was incidental than on an attempt to directly gainsay the evidence offered.

It is clear beyond question that the only novelty which the complainants can presume to maintain is the use of the coupling, or dowel, in connection with the tubing. It is not easy to perceive that such a use is within the range of patentable invention. Dowels, and couplings in the nature of dowels, are common to all the arts, and this application to any particular art cannot, therefore, be regarded as indicating inventive faculty unless the circumstances are more peculiar than those found in the case at bar. The propositions relied on by the complainants, that the earlier applications of the dowel to these purposes were incidental, so far, under the circumstances, from strengthening their case, weakens it; because it indicates that various persons, when the emergency arose, laid their hands promptly on this as an available resource, so that its use was simply an exhibition of ordinary skill in the art to which it appertains. The presumption of the want of the inventive faculty in the application of a dowel to any particular art cannot be overcome by mere proof of novelty, or by the presumption arising from the issue of a patent, or by proofs of the indecisive character which we have here, to the effect that it met a want which had long existed, but which persons skilled in the art had not been able to overcome, or by all combined.

Let there be a decree entered according to rule 21, dismissing the bill, with costs.