PEERLESS RUBBER MFG. CO. v. WHITE.

(Circuit Court of Appeals, Third Circuit.   September 22, 1902.)

No. 16.

1. PATENTS—INFRINGEMENT—PACKING.

The White patent, No. 337,100, for a packing consisting of a tubular, practically nonelastic core, capable of being bent or flattened, covered with an elastic material, described in claim 2 as a tubular lead core encased in a tube of rubber, requires, to accomplish the purposes of the invention as set forth in the specification, that the core should extend through the entire length of the inclosing tube of rubber; and it is not infringed by the use of a tubular lead dowel, only two inches in length, to unite the ends of a tubular rubber or other elastic packing to form a gasket.

Acheson, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

Ernest Hopkinson and Livingston Gifford, for appellant.
Marshall A. Christy, for appellee.

Before ACHESON and GRAY, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge.   This is an appeal from a final decree of the circuit court for the western district of Pennsylvania (111 Fed. 190), finding infringement by the Peerless Rubber Manufacturing Company, the appellant, of letters patent of the United States No. 337,100, granted to William White, Jr., the appellee, and dated March 2, 1886.   The patent in suit is for "Improvements in Packings" and contains two claims, both of which are alleged to have been infringed. The description of the patent is as follows:

"This invention has relation to packings for pistons, valves, pipes, and for other uses to which packings are usually or may be applied, and has for its object the provision of a novel form of packing which shall possess all the requisites of an air-tight, fluid-tight, or liquid-tight seal, and which shall be susceptible of being fitted snugly into all positions or seats and of retaining its shape and position.   The value of both lead and india-rubber as packing materials is well understood and appreciated, and these materials have been combined in various ways for the purpose of making packings for vapors and liquids.   My purpose is to employ these materials or their substantial equivalents under novel conditions and to better advantage than they have been heretofore used.   My object in employing the lead is to provide a filling material or core which may be bent, flattened, or compressed into shapes corresponding to the seat or recess into which the packing is to be fitted, while I use the rubber as a covering or casing, and distinctly and specifically as a seal, which will be forced and held in place by the lead core.   My invention as distinguished from other packings composed of the same materials consists, essentially, of a core made of lead or other material which may be bent or compressed, and which is practically non-elastic, such core being in the form of a tube, so that it may be readily flattened or spread, and a covering or casing of rubber or other elastic material possessing qualities which especially adapt it to use as a close and effective seal.   The core and casing may be formed into a ring, or they may be of any desired shape, according to the specific use to which the packing is to be put.   In the accompanying drawings, Figure 1 is a sectional view of a packing-ring; and Fig. 2, a side

view of a form, which may be bent to any required shape. A designates the lead core, of any suitable dimensions, but of tubular form; and B is the tubular casing, which consists of india-rubber—preferably pure rubber. When the packing is manufactured in the ring shape shown in Fig. 1, the ring will be unbroken, so as to avoid seams. A packing made in conformity with my invention possesses obvious advantages. It may be packed or placed in positions for which other or elastic packings are not adapted and where a perfectly-tight packing is required. When subjected to the pressure of gland sections or caps, the lead core is spread or flattened, and thus caused to conform to the shape or surface upon or against which it rests while the rubber is closely pressed upon the joints, where it remains, held permanently and tightly in place by the core."

The claims are as follows:

"1. As a new article of manufacture, a packing consisting, essentially, of a tubular practically non-elastic core, capable of being bent or flattened and a casing or covering of elastic material adapted to constitute a seal, substantially as described.

"2. As a new article of manufacture, a packing consisting of a tubular lead core incased in a tube of rubber, substantially as described."

The following drawings accompany the specification:

The alleged infringing device is made under and pursuant to letters patent of the United States No. 462,278, granted to Edward L. Perry, for "Improvements in Steam-Joint" packing, and dated November 3, 1891. The description is as follows:

"Figure 1 of the drawings represents a view of my improved steam-joint packing previous to the ends being connected together by the tubular coupling. Fig. 2 represents a plan view, partly in section, showing the two ends of the packing connected together; Fig. 3, a cross-section through the packing; Fig. 4, a similar view showing the packing and coupling-tube compressed; Fig. 5, a detailed view in perspective of the coupling-tube. The present invention has relation to that class of steam-packing or gaskets for hand-holes, man-holes, cylinder-heads, and in other places where a packing of this description would be found useful; and it consists in a packing constructed substantially as shown in the drawings, and hereinafter described and claimed. In the accompanying drawings, A represents the outer covering, of rubber compound or other suitable elastic material, and B the core of cotton-duck or other well-known woven fabrics wound in layers to form the core of the desired size. It is necessary for the more perfect construction of the packing and to render

it sufficiently strong to resist the pressure of the steam and prevent blowing out to form the core of a woven fabric which possesses the requisite strength and durability for the purpose intended. The packing above described may be round, oval, square, or of any other preferred shape in cross-section, and any diameter as found most desirable, such changes coming within ordinary mechanical skill, and I therefore reserve the right to make them without departing from the principle of my invention. In order to secure the compression of the packing more readily, the core B is made hollow, which also provides means for attaching the ends of the hollow coupling-tube C to join the two ends of the packing together, after which the joint thus made is covered with a piece of suitable material. The coupling-tube is preferably of metal, but other material may be used, and it is made hollow to enable it to be compressed with the packing. Although it is considered materially advantageous to have the coupling in the form of a hollow tube, a solid coupling may be used, but possibly not with as good results."

The claim of this patent is as follows:

"A steam-joint packing consisting of a hollow core of cotton-duck or other woven fabric, a covering of elastic material, and a coupling the ends of which enter the ends of the packing, substantially as and for the purpose specified."

The drawings of the Perry patent are as follows:

It is not contended that the appellant's packing, aside from the employment of the lead coupling tube, constitutes any invasion of the rights of the appellee under the patent in suit. The appellant's tubing not only is essentially different in construction and function from that of the appellee, but was well known to the public for years before application was made for the patent in suit. Prior to the hearing in the court below counsel stipulated as follows:

"It is hereby stipulated and agreed, as matter of record in this case, for use on the final or other hearing thereof, that prior to December 17, 1883, rubber-insertion tubing—that is, tubing composed of adhering layers of rubber, and of duck, cotton cloth or like fibrous material, the outer layer of said tubing being rubber—has been publicly used by a number of steam fitters and engineers in the City of New Haven, Conn., as gaskets or packing, for packing manholes and handholes of boilers and steam-pipe connections."

Hence it is evident that, aside from the tubular lead couplings employed or furnished by the appellant for the purpose of joining the ends of its packing to form a gasket, the appellant had full right to make, use and sell such packing for steam joints, pistons, valves, pipes, and other similar uses, and cannot be held an infringer on account of the exercise of that right. But it is contended that the appellant's lead coupling tube is a lead core within the scope of the claims of the patent in suit, and that the appellant, in making, using or selling it in connection with its rubber and cotton-duck packing, violated both of the claims, in that it together with the portion of the tubing in which it is inserted, and to the extent to which it is so inserted, is, first, a "tubular practically non-elastic core capable of being bent or flattened and a casing or covering of elastic material adapted to constitute a seal, substantially as described," and, secondly, a "tubular lead core incased in a tube of rubber, substantially as described." In order to determine the weight, if any, to which this contention is entitled, we proceed in the first place to ascertain the essential elements and principle of the invention covered by the patent in suit. The patentee did not seek to secure a monopoly of each and every combination of lead and rubber which might be used for packings or gaskets, but only the combination of those materials or their equivalents in a certain form and disposition described and claimed in the patent. He says:

"The value of both lead and india-rubber as packing materials is well understood and appreciated, and these materials have been combined in various ways for the purpose of making packings for vapors and liquids. My purpose is to employ these materials or their substantial equivalents under novel conditions and to better advantage than they have been heretofore used."

He then states his object in employing lead and rubber and the essence of his invention as follows:

"My object in employing the lead is to provide a filling material or core which may be bent, flattened, or compressed into shapes corresponding to the seat or recess into which the packing is to be fitted, while I use the rubber as a covering or casing, and distinctly and specifically as a seal, which will be forced and held in place by the lead core. My invention as distinguished from other packings composed of the same materials consists, essentially, of a core made of lead or other material which may be bent or compressed, and which is practically non-elastic, such core being in the form of a tube, so that it may be readily flattened or spread, and a covering or casing of rubber or

other elastic material possessing qualities which especially adapt it to use as a close and effective seal."

He further says:

"When subjected to the pressure of gland sections or caps, the lead core is spread or flattened, and thus caused to conform to the shape or surface upon or against which it rests while the rubber is closely pressed upon the joints, where it remains, held permanently and tightly in place by the core."

Careful examination of the entire specification has satisfied us that the claims read in the light of the description contemplate and require that in any given length of the appellee's packing, when used for the purpose for which it was designed, the tubular core of lead or other "practically non-elastic" material, and the "tube of rubber" or "casing or covering of elastic material" shall be co-extensive with each other, and that all the lead core entering into such length of packing should be unitary or entire, each portion thereof being integral with every other portion. This conclusion, we think, naturally and necessarily flows from the language of the patent in suit, and the manifest design of the patentee as therein disclosed. It also receives strong support from the testimony of the expert witnesses on both sides. Foster on behalf of the appellant says:

"The patentee proposes to make a packing consisting throughout its entire extent of two parts, to wit: 1. 'A filling material or core'—such core being in the form of a tube. 2. 'A covering or casing of rubber or other elastic material,' and tubular so as to enclose the core and preferably of pure rubber. I understand that the entire packing from end to end or throughout its length, consists thus of the tubular metallic core and the tubular rubber casing. * * * The statement as to the character of the core and the covering aptly apply to an article consisting throughout its entire extent of a core extending throughout the length of the covering, and a covering extending the length of the core. * * * The specification sets forth the advantages of a packing thus constructed, that it may be formed into a ring or of any desired shape, according to the specific use to which the packing is to be put; that it may be packed or placed and will retain its shape in all positions, for which other or elastic packings are not adapted, and that the conjoint action of the lead core and rubber casing is such that the rubber is closely pressed upon the joints where it remains, while the core holds the rubber permanently and tightly in place."

Spencer on behalf of the appellee says:

"The packing set forth in said patent consists of two essential elements, namely, a flexible, compressible, metallic core of tubular form and an external elastic tubular covering enclosing said core. The material described as composing such tubular core is lead, and the elastic covering therefor as india rubber—preferably pure rubber. The advantages attributed to the lead core are the compressibility of the tube under pressure, and the fact that it may be bent to the desired shape, which shape it would tend to retain so as to hold the packing in position to be applied to the closing of any joint. The yielding cover of rubber or its equivalent adapts the packing as a whole to fill any inequalities in the surfaces of the joint to be packed, such elastic covering being supported from within by the compressible core of lead. * * * xQ. 15. Referring to the White patent in suit, please state the element or elements which there give the strength and the elasticity? A. The elements of the White patent packing as described and shown are a tubular practically non-elastic core, capable of being bent or flattened, and a casing or covering of elastic material adapted to constitute a seal. In this structure, the core would provide the element of strength and the covering the element of elasticity. xQ. 16. It is therefore necessary, is it not, that in the White patent, the metal core should be co-extensive with the rubber covering? A. It

is desirable that it should be co-extensive, and in the drawings of the patent it is so shown. * * * The White packing was undoubtedly designed to have as a continuous core a tube of lead capable of being bent, flattened and compressed. * * * xQ. 94. Do you not think that the language of the specification, when considered by you as an expert familiar with the subject-matter, clearly indicates the presence of a metal tube co-extensive with the rubber covering? A. They indicate the presence of a compressible tube throughout the casing. I have no doubt that the White patent contemplates the presence of the two tubes at all parts of the packing. * * * xQ. 101. Do you find anything in the White patent which allows you to dispense with having the metal tube co-extensive with the elastic covering any more than it allows you to dispense with having the elastic covering co-extensive with the metal tube? Please notice that the question confines itself to the patent. A. No."

The combination of the patent in suit consists essentially "of a tubular practically non-elastic core capable of being bent or flattened and a casing or covering of elastic material adapted to constitute a seal, substantially as described," or "of a tubular lead core incased in a tube of rubber, substantially as described." As before stated, the core and casing are co-extensive in any length of the appellee's packing when used for the purpose for which it was designed. The core is of uniform diameter throughout any portion constituting a gasket. Before being applied to the joint to be packed, the packing through the bending of the practically non-elastic core can be made to conform to the seat or recess for which it is intended, whether of circular or any other shape or figure; and when so bent is calculated to retain before and until its application to the joint such shape or figure. It may, as stated in the description, be "packed or placed in positions for which other or elastic packings are not adapted."

The alleged infringing device or construction consists of a rubber tube with a hollow core or interior lining of cotton-duck co-extensive with the tube, and a hollow lead coupler or dowel-pin, the ends of which enter the hollow core or interior lining at the ends of the packing when used for the purpose for which it is designed. The covering or casing of the packing, as that of the appellee's packing, is elastic; but the core or lining, unlike the core of the patent in suit, is not "practically non-elastic." On the contrary, it consists of cotton-duck and is used, not to perform the function of the lead core, but simply because, as stated in the Perry patent, and shown by the evidence, "it is necessary for the more perfect construction of the packing and to render it sufficiently strong to resist the pressure of the steam and prevent blowing out to form the core of a woven fabric which possesses the requisite strength and durability for the purpose intended." An essential difference between the packing of the appellant and that of the appellee is that the latter may, through the bending of the practically non-elastic core of lead, be made to assume and retain any desired figure or shape prior to its application to the seat or recess of the joint to be packed, while the former, by reason of its elastic composition of cotton cloth incased in rubber tubing, is not capable before such application of assuming and retaining the desired figure or shape. Foster, the appellant's expert, on this point says:

"The specification sets forth the advantages of a packing thus constructed, that it may be formed into a ring or of any desired shape, according to the

specific use to which the packing is to be put; that it may be packed or placed and will retain its shape in all positions; for which other or elastic packings are not adapted. * * * Owing to the presence of the lead core extending the length of the packing, the latter may be bent into the form of a ring or square or triangle, or any regular or irregular shape, and will retain its place and position so that it may be readily adjusted upon seats of regular or irregular form, and there clamped to make the joint; and this cannot be done with other elastic packings which do not have cores of non-elastic material, such as lead. * * * I understand by non-elastic, to be meant that the core shall be of a material which, after having been brought to a given shape or position, will not tend to restore itself to its original shape or position. * * * So far as the main body of defendant's packing is concerned, that is, that part which is not in immediate proximity to the joint, it possesses none of the characteristics. specified as incident to the packing of the White patent. That is, it is not, as a packing, susceptible of being bent or formed into any desired shape. It is incapable of retaining a shape to which it is bent, but is elastic and on the removal of pressure will assume an annular shape. It is not susceptible of being packed or placed in positions for which other elastic packings are not adapted. * * * xQ. 29. Hence, if I understand you, you consider that unless the packing by reason of the presence of the core is capable of being bent into irregular form, as well as the simple ring form, and of retaining such irregular form, it would not embody the White invention, is that correct? A. It is certainly correct. It was the obvious purpose of the patentee to make just such a packing."

The appellee's expert says:

"Mr. Foster is also of the opinion that ordinary elastic packings cannot be bent into irregular shapes and placed in position between packing faces or sheets, and hence that a packing which had a practically non-elastic core within an elastic body is substantially unlike one which is elastic only. In this he is undoubtedly correct. * * * The elements of the White patent packing as described and shown are a tubular practically non-elastic core, capable of being bent or flattened, and a casing or covering of elastic material adapted to constitute a seal. In this structure, the core would provide the element of strength and the covering the element of elasticity. * * * No attempt is made in the White patent to cover the use of these two materials in general or in any construction which does not embody a tubular core, capable of being bent in shape and compressed when in use, and covered with a tubular elastic casing."

The elasticity and flexibility of the appellee's packing are so dominated by its continuous core of lead that the packing as a whole retains the figure or shape to which it is bent. The appellant's packing, on the other hand, is so flexible by reason of its composition of rubber and cotton-duck as to be incapable, before application to the joint to be packed, of retaining the desired figure or shape.

The hollow lead coupler or dowel-pin employed by the appellant to join the ends of its packing or tubing in forming a gasket is about two inches long, one half of it being inserted in the cotton-duck core or lining at one end of the tubing, and the other half in the cotton-duck core or lining at the other end of the tubing, thus coupling the two ends of the tubing together. It is not claimed that the coupler is of excessive or improper length for that purpose. That the appellant had, in view of the state of the art, a right to make, use and sell packing consisting of a hollow cotton-duck core of lining incased in a rubber tube is, as has appeared, beyond controversy. It is equally clear that the appellant had a right to fasten the ends of his packing together with twine, wire or rubber, but it is claimed that it could not use for that purpose a tubular or other practically non-elastic

core without infringing the patent in suit. That patent does not either in its claims or description mention a coupler of any kind. It does not contain a suggestion of the means or manner in or by which the ends of the tubing are to be fastened together. Whether the patentee intended that the ends should be spliced together or, owing to the comparative rigidity of the tubing, merely be brought together by bending, or otherwise disposed of, is purely matter of conjecture so far as the disclosures of the patent are concerned. If, then, the appellant has been guilty of infringement, the infringement cannot be predicated from the fact that at one or more points in its gaskets it has used a tubular lead coupler merely as a coupler, unless the use of such coupler has performed or been capable of performing in greater or less degree, but to some substantial extent, the function of the tubular lead core of the appellee when used with its elastic casing of rubber for the purpose for which it was designed and patented. It is true that, wherever a tubular coupling or dowel-pin is used in forming gaskets of the appellant's tubing, there is to be found for a space of about two inches, representing the length of such coupler or pin, a combination of the same materials, or their equivalents, as are contained in the tubing of the appellee throughout the entire length forming a gasket; and it is further true, according to the evidence, that the appellant's tubular coupling pin serves to strengthen its gaskets at the point or points where the ends of its tubing are brought together to complete such gaskets, and at such point or points to produce a closer and more effective seal for the joint or joints to be packed. These considerations, however, are by no means determinative of the question of infringement. The patent in suit, while not for a completed gasket as such, composed of certain materials, is nevertheless for a combination of certain materials in a specified form for the purpose of being used as a packing. It contemplates that a tubing of any given length necessary to form a complete gasket shall, when used for that purpose, be unitary, longitudinally homogeneous and the whole of uniform rigidity, whatever may be the degree of such rigidity. It does not contemplate that the tubing composing a gasket shall in any part or parts of the periphery be of comparative rigidity and in any other parts of comparative flexibility. Such a construction would be aside from the gist of the invention as gathered from a fair reading of the specification as a whole. The two essential features of the appellee's tubing are, first, its capability, by reason of its comparative rigidity, of retaining the figure or shape to which it may be bent before its application to the seat or recess into which it is to be compressed, and, secondly, its capability, by reason of its uniformity in composition and its strength, when formed into a gasket, placed in position and subjected to pressure, of serving as a tight and effective seal for all parts of the joint to be packed. The appellant's coupler or dowel-pin does not perform either of these functions. We are not to be understood as holding that by no possibility could infringement result from the employment of such couplers. If they were so inserted throughout the entire length of the tubing forming a gasket as to be co-extensive with the tubing and by some means, not readily comprehensible, rigidly attached to one another in such manner as practically to constitute a continuous and integral leaden core, in-

fringement would doubtless result. But no such case is before the court. White's object was "the provision of a novel form of packing which shall possess all the requisites of an air-tight, fluid-tight, or liquid-tight seal" for the joint to be packed, and which consequently should be of uniform composition and qualities throughout the gasket. In order to form "a close and effective seal," as those words are employed in the patent in suit, the tubing was, when constituting a gasket, to be a homogeneous entirety, serving to seal all portions of the periphery of the joint to be packed. If the appellee were to dispense with one half or other substantial proportion of the tubular lead core from the tubing constituting a gasket, then, so far as such a core may be necessary to produce a close and effective seal for the joint to be packed, while the remaining portion of the core would throughout its length serve to produce such a seal, the gasket would not in its entirety be either close or effective. To be a close and effective seal in any useful sense or in the sense of the patent in suit, the gasket must be a close and effective seal in its entirety. The tubular coupler of the appellant is employed strictly as a coupler and wholly fails to perform the function of the unitary construction of the appellee, whatever other advantage the appellant may derive from its use. In Sewall v. Jones, 91 U. S. 171, 183, 23 L. Ed. 275, Mr. Justice Hunt, delivering the opinion of the court, said:

"To constitute an infringement, the thing used by the defendant must be such as substantially to embody the patentee's mode of operation, and thereby to attain the same kind of result as was reached by his invention. It is not necessary that the defendant should employ the plaintiff's invention to as good advantage as he employed it, or that the result should be the same in degree; but it must be the same in kind. * * * In an action for infringement, the first question is, whether the machine used by the defendant is substantially, in its principle and mode of operation, like the plaintiff's. If so, it is an infringement to use it. * * * If he has taken the same plan and applied it to the same purpose, notwithstanding he may have varied the process of the application, his manufacture will be substantially identical with that of the patentee."

The patent in suit does not claim or require that the lead composing the tubular core shall be of any specified thickness, and it is undoubtedly true that, if the appellant had used in its packing a tubular core of lead, although too thin and of little effect, co-extensive with the continuous length of composition rubber casing composing the gasket in its entirety, the appellant would have been guilty of infringement; for such a construction, though varying in degree, would have been the same in kind as that of the appellee. But on the facts in this case we think that sameness in kind is, in view of the foregoing considerations, inseparable from and dependent upon an extension of a tubular lead core or practically non-elastic core throughout the whole extent of the gasket.

It is a well-established rule that "that which infringes, if later, would anticipate, if earlier"; and, conversely, that a device cannot be held to be an infringement unless it would have been held, if used earlier than the patent, to have been an anticipation thereof. Tobacco Co. v. Streat, 28 C. C. A. 18, 83 Fed. 700. Had the appellant years before the application for the patent in suit received a patent for its present tubing, including the coupling pin as used by it, such a patent, if valid,

could not, in our opinion, have served to anticipate the invention covered by the patent in suit. The coupler in the earlier patent would not have suggested or been calculated to suggest to those skilled in the art the continuous tubular core of the appellee. The patent in suit, notwithstanding the existence of such earlier patent, would have embodied an independent and wholly distinct construction involving an exercise of the inventive faculty and differentiated from the earlier construction in conception, plan, design, and functions.

There is another ground on which the decree of the court below must be reversed. The appellant, in the employment of its tubular coupler, has not, in our opinion, used anything which it did not have a right to use, nor has it appropriated anything which the appellee had a right to cover by the patent in suit. The employment of such a coupler in packings was open to the public, as not involving patentable invention, for a period long antedating the patent in suit. In Perry v. Rubber Co. (C. C.) 86 Fed. 633, the Perry patent was in suit. Judge Putnam, speaking of the tubular metal coupling, said:

"It is clear beyond question that the only novelty which the complainants can presume to maintain is the use of the coupling, or dowel, in connection with the tubing. It is not easy to perceive that such a use is within the range of patentable invention. Dowels, and couplings in the nature of dowels, are common to all the arts, and this application to any particular art cannot, therefore, be regarded as indicating inventive faculty unless the circumstances are more peculiar than those found in the case at bar. The propositions relied on by the complainants, that the earlier applications of the dowel to these purposes were incidental, so far, under the circumstances, from strengthening their case, weakens it; because it indicates that various persons, when the emergency arose, laid their hands promptly on this as an available resource, so that its use was simply an exhibition of ordinary skill in the art to which it appertains. The presumption of the want of the inventive faculty in the application of a dowel to any particular art cannot be overcome by mere proof of novelty, or by the presumption arising from the issue of a patent, or by proofs of the indecisive character which we have here, to the effect that it met a want which had long existed, but which persons skilled in the art had not been able to overcome, or by all combined."

The bill was dismissed and on appeal the decree was affirmed. 43 C. C. A. 248, 103 Fed. 314. Judge Colt, in delivering the opinion of the circuit court of appeals, spoke of one of the grounds of affirmation as follows:

"There is nothing new or novel in a tubing made of rubber and fabric as described in the patent. This is abundantly shown by the record. The coupling which forms the other element of the combination is simply a dowel-pin. * * * Turning to the rubber art, we find it was common to unite the abutting end of two pieces of rubber tubing, such as hose, by a coupling inserted in the ends. As was said by complainants' expert: 'It has been a common practice almost ever since rubber tubing began to be used, and so far back as I can remember, to couple together the ends of two rubber-tube sections by means of a coupling inserted in the ends.' Such being the common practice respecting two pieces of tubing, there was manifestly no invention in so uniting the ends of a single piece of tubing to form a gasket or packing. But it is said the old forms of coupling were rigid, and that in the Perry device the coupling must be compressible, and that this feature establishes patentable novelty. Whether a coupling-pin is made compressible or incompressible would seem to depend upon whether the tubing or packing was designed to be solid or compressible. To make a coupling-pin solid and incompressible for use in an incompressible tubing or packing, or hollow and compressible for use in a compressible tubing or packing, does not involve inventive thought. As the Perry packing is made hollow and compressible,

it would occur to any ordinary mechanic that it would be better to make the coupling-pin hollow or compressible."

We do not regard the language above quoted from Judge Putnam and Judge Colt as mere dicta or inapplicable to this case. While we are not bound by the Massachusetts decision, it is entitled to much weight on the question whether the appellant can be held as an infringer because of its use of its hollow lead coupler. If the appellant, suing with Perry, could not sustain a bill for infringement of the Perry patent on account of the use by another of the coupler of that patent, for the reason that the patent was void as to such coupler for lack of invention, we cannot perceive how under substantially the same evidence as to length of user of packing tubing and couplers the appellant can be held in this case liable as an infringer for using or selling the same coupler. The appellant had the right in common with the rest of the public to use such a coupler in packings as it now employs long prior to the patent in suit, and, having such right, could not be deprived of it by that patent. This conclusion cannot in any legitimate sense prejudice the appellee in the enjoyment of his invention, but conforms to the substantial equities of the case.

The decree of the court below is reversed, with costs to the appellant.

ACHESON, Circuit Judge (dissenting). I am constrained to dissent from the reversing decree in this case. The controlling question here is that of infringement. This appears from the elaborate discussion of that question in the opinion expressing the views of the majority. It is true that at the close of the opinion the want of novelty is advanced as good ground of defense; the suggestion being founded upon the decision in Perry v. Rubber Co. (C. C.) 86 Fed. 633, affirmed in 43 C. C. A. 248, 103 Fed. 314. But in that case the suit was for the infringement of the Perry patent, which is junior to the White patent, upon which the present suit was founded. The White patent was part of the prior art, and clearly, as it seems to me, the remarks of the learned judges of the First circuit in the cited case, quoted and relied on by the majority of this court, have no legitimate bearing upon the case now before us. Upon the question of infringement, the judgment of the majority rests upon the view that there can be no violation of either of the claims of the White patent, except by the use of a nonelastic core extending throughout the entire length of the outer tubular casing. I am not able to read the claims of the patent in such a restricted and destructive sense. The claims are for a packing material composed of specified elements in combination, and, in my judgment, a completed gasket which at any part contains to a beneficial extent the patented combination constitutes use of the invention and infringes the patent. Undoubtedly the defendant uses the article described and claimed in White's patent. It is no answer to say that the defendant's use of the patented article is small. The defendant uses the patented article to the extent it desires. The learned judge of the circuit court well said:

"At the joint, which is the most vulnerable place in the packing, and at the point where there are inequalities in the surface, which is the most

difficult place to seal, the respondent uses the identical elements of White's combination operating in the same way. If it secure the same result as White by using his device where its use is essential and substantial and discards it where it is non-essential and immaterial, we must still hold, if the patent serves to substantially protect, that the respondent has taken the substance of White's device. We, therefore, hold the respondent an infringer, for one who appropriates an invention so as to gain imperfectly or to a limited extent the advantages which may be derived therefrom, does not thereby free himself from infringement. Sewall v. Jones, 91 U. S. 171, 23 L. Ed. 275, and cases cited. To the extent the respondent uses White's combination, to such an extent it acquires the full measure of benefit from it. Celluloid Mfg. Co. v. Crolithion Collar & Cuff Co. (C. C.) 23 Fed. 397, is akin to this case. By using some of the complainant's packing respondent uses enough to make it an infringer."

I am in accord with the above views of the circuit court, and would affirm its decree.