## In re H. J. QUIMBY FREIGHT FORWARDING CO.

(District Court, D. Massachusetts.   February 14, 1903.)

### No. 6,615.

1. BANKRUPTCY—CORPORATIONS—PURSUITS—TRADING.

    The purchase by a freight forwarding company of horses, hay, wagons, harnesses, etc., necessary to carry on its business, and the occasional incidental sale of horses and wagons, does not transform it into a trading or mercantile company, within the meaning of section 4 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]), providing that "corporations principally engaged in * * * trading * * * or mercantile pursuits" shall be susceptible to bankruptcy.

2. SAME—STATUTORY PROVISIONS—INTERPRETATION—FORMER PROVISIONS.

    The difference in language between the act of 1867, which provided for the bankruptcy of "all monied business or commercial corporations," and section 4 of the act of 1898 (act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]), providing for the bankruptcy of corporations "engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits," implies an exclusion of some corporations under the act of 1898, which were within the purview of the former act.

3. SAME—CHARTER PROVISIONS.

    While the susceptibility to bankruptcy of a corporation does not depend wholly on its charter, yet it can hardly be brought within the scope of the act by a principal business outside its charter; and therefore a company whose only authorized business is that of a carrier, is not susceptible to bankruptcy on the ground that its principal business is in fact that of a trader.

4. SAME—PRINCIPAL BUSINESS.

    A corporation whose business was chiefly that of a carrier, and to a less degree that of letting teams by the hour, day, or week, with a subordinate business of taking horses to board, cannot be held to have been principally engaged in trading, within the meaning of section 4 of the bankruptcy act of 1898 [U. S. Comp. St. 1901, p. 3423].

5. SAME—AMENDMENT TO ACT.

    The interpretation of the bankruptcy act of 1898 [U. S. Comp. St. 1901, p. 3418], giving the words "trading" and "mercantile" a narrower meaning than "monied business or commercial," as used in the act of 1867, is strengthened by the adoption of the recent amendment, wherein by specific language "mining" is added to the "pursuits" rendering corporations susceptible to bankruptcy.

In Bankruptcy.

Allin & Thompson and B. Marvin Fernald, for petitioning creditors.

Frank H. Stewart, for objecting creditors.

LOWELL, District Judge.   The respondent in this case was incorporated as a "common carrier of property or persons."   Some of its officers testified that a large part of its business was the buying and selling of horses, hay, grain, wagons, harnesses, etc., and that most of its business was outside the usual business of a common carrier.   An examination of the books, which were not produced before the referee, leaves little weight in this testimony.   The cor-

¶ 1. What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.

poration bought the articles above mentioned, as every express company and every carrier of this sort must do. These purchases do not make a carrier into a grain merchant any more than the necessary purchases of a hotel make it into a grocery or a dry goods store. Horses and wagons were sold now and then, but only as an incident of the general business. No sales of grain have been pointed out. The corporation did board a good many horses not its own, and let out teams on hire by the day or week, apparently as a part of its regular business. The court has to consider if a corporation, chartered as a carrier, but which also lets teams for hire, and takes horses to board, is within the terms of section 4 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]).

Section 4 of the bankrupt act speaks of corporations "engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits." The respondent corporation is not principally engaged in manufacturing, printing, or publishing pursuits. If it is within the act at all, this is because its pursuits are trading or mercantile; and for the purposes of this case, the word "mercantile" adds very little to the word "trading." Is the respondent principally engaged in trading pursuits? Is it a trading corporation? In interpreting the words "trading" and "trader," regard must be had both to the history of the present bankrupt act and to the law of bankruptcy in general. The act of 1867 was wider in its scope than the act of 1898 [U. S. Comp. St. 1901, p. 3418], and provided for the bankruptcy of "all monied business or commercial corporations and joint-stock companies." The marked difference of language in the two acts should be given some effect, and some corporations within the purview of the earlier act are without the purview of the latter.

The present respondent was incorporated to carry on the business of a common carrier of persons and property. The susceptibility to bankruptcy of a corporation does not depend wholly upon its charter. This is clear, both from the language of the act, which speaks, not of a corporation's charter powers, but of the business in which it is principally engaged, and also from the decided cases. A corporation may have charter power to do that which is not its principal business, but a corporation can hardly be brought within the scope of the bankrupt act by a principal business which is beyond the authority given by its charter. No case and no theory has ever treated the business of a common carrier as that of a trader, and the only authorized business of this respondent was that of a common carrier. This consideration may be sufficient to dismiss the petition, but the same result will be reached if the actual principal business of the corporation is considered. This has been already stated. Its actual business was chiefly that of a common carrier, and in less degree that of letting teams by the hour, day, or week, with a wholly subordinate business of taking horses to board. All the other transactions proved were purely incidental. Bearing in mind that the act of 1898 was intended to exclude from bankruptcy some corporations susceptible of bankruptcy under the act of 1867,

and that "trading" is a technical word, this respondent cannot be held to have been principally engaged in trading. In re Surety Guarantee & Trust Co., 9 Am. Bankr. R. 129, 121 Fed. 73.

Mining comes much nearer to trading than does the business of the respondent, but a mining company has generally been held to be excluded from the scope of the present bankrupt act. In re Woodside Coal Co. (D. C.) 105 Fed. 56; In re Chicago-Joplin Co. (D. C.) 104 Fed. 67; In re Elk Park Mining Co. (D. C.) 101 Fed. 422; In re Keystone Co. (D. C.) 109 Fed. 872. This interpretation of the act is rather confirmed by the amendment just adopted by Congress. Mining companies are there brought within the act, not by the use of broad general language, but by the addition of "mining" to the "pursuits" mentioned in the original act. "Expressio unius est exclusio alterius." The positive inclusion of mining companies, and mining companies alone, indicates a recognition by Congress that the words "trading" and "mercantile" in the original act were not intended to be the equivalent of "monied business or commercial" in the act of 1867. The decided cases are to the same general effect. A theatrical company has been held not susceptible of bankruptcy. In re Oriental Society (D. C.) 104 Fed. 975. Nor is a water company, which buys and sells water as a part of its regular business. In re New York Water Co. (D. C.) 98 Fed. 711. A saloon is excluded. In re Chesapeake Oyster Co. (D. C.) 112 Fed. 960. And a club. Fulton Club (D. C.) 113 Fed. 997. Almost directly in point is the decision of the District Court of the Eastern District of Pennsylvania in Philadelphia Transportation Co., 114 Fed. 403.

It is true that there are some cases which take a broader view of the act. San Gabriel Sanatorium Co. (D. C.) 95 Fed. 271, holds that a sanatorium conducted for profit is within the meaning of the act; but this case has been frequently disapproved. In re Morton Boarding Stables (D. C.) 108 Fed. 791, expressly follows In re Odell, Fed. Cas. No. 10,426, in holding a livery stable keeper a trader. Evidently the learned judge yielded to authority rather than was convinced as a matter of principle. The authority in this district is the other way. See In re Smith, 2 Low. 69, Fed. Cas. No. 12,981. In Re Mutual Mercantile Agency (D. C.) 111 Fed. 152, a mercantile agency was held to be within the scope of the act, apparently because its principal business was printing and publishing a book of ratings. While this court may think it advisable that corporations like the one here in question should be brought within the scope of the bankrupt act, it must be guided by what Congress has said, and not by its own view of public policy.

The petition is dismissed, with costs.