CATE et al. v. CONNELL et al.

(Circuit Court of Appeals, First Circuit. October 29, 1909.)

No. 833.

**1. BANKRUPTCY (§ 72*)—CORPORATIONS SUBJECT TO ACT—NATURE OF CORPORATE BUSINESS.**

Where the business of a corporation, as stated in its charter, included some pursuits which are within and others which are without the operation of the bankruptcy law, whether or not it is subject to the act depends on the principal business in which it was actually engaged at or about the time the petition was filed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 17; Dec. Dig. § 72.*

What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

**2. BANKRUPTCY (§ 72*)—CORPORATIONS SUBJECT TO ACT—NATURE OF CORPORATE BUSINESS—"MANUFACTURING PURSUIT."**

The conducting by a corporation of a shop for the repairing of automobiles, which repairing consisted chiefly in the adjusting of parts purchased from other persons, was not a manufacturing pursuit, within the meaning of Bankr. Act 1898, c. 541, § 4b, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), which subjected the corporation to proceedings in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 17; Dec. Dig. § 72.*]

Appeal from the District Court of the United States for the District of Massachusetts.

In the matter of the Concord Motor Car Company, bankrupt. From an order of adjudication, Martin L. Cate and others, creditors, appeal. Reversed.

Robert E. Goodwin (Carver, Wardner & Goodwin, on the brief), for appellants.

Robert A. Jordan, for appellees.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

LOWELL, Circuit Judge. On April 9, 1909, Connell and others filed a petition in involuntary bankruptcy against the Concord Motor Car Company, a corporation established under the laws of Massachusetts, "to manufacture, purchase, sell, hire, lease, and operate automobiles, motor boats, and motor engines, and, further, to act as general or special agent of any individual, company, or corporation now or hereafter engaged in the manufacture and sale of automobiles, motor boats, and motor engines." Cate and others, being creditors of the respondent, duly intervened to resist the petition, and among other defenses set up that the respondent was not at the time of filing the petition engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits, within the meaning of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). The case was referred to the referee, under rule 12 of the General Orders in Bankruptcy (32 C. C. A. xvi, 89 Fed. vii), to ascertain the facts and report on the question of adjudication.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The referee found that the respondent corporation was organized in June, 1906, and from that time until January, 1908, was engaged in the business of buying and selling automobiles; that at about the last-mentioned date it added to its business a garage and a machine shop. Savell, the respondent's president and treasurer, testified that thereafter the respondent ceased the purchase and sale of automobiles, and this is implied in the referee's report, though not expressly stated. Savell also testified that from January 1, 1908, it carried on the business of a garage, and at the same time repaired automobiles and furnished them with supplies. These repairs and supplies were not confined to the automobiles regularly kept in the garage. The referee further found that at least 75 per cent. of the respondent's business was that of repairing and furnishing supplies. He was of the opinion that the respondent "was engaged, not only in manufacturing, but also as a trader and in a mercantile pursuit," and he recommended an adjudication of bankruptcy. The learned judge of the District Court agreed with the finding of the referee, and especially:

"That at least 75 per cent. of its [the respondent's] business consisted in repairing automobiles and furnishing supplies of all sorts for them, and that making such repairs and furnishing such supplies were its principal and foremost business."

He therefore decreed an adjudication.

The respondent's business, as stated in its charter, included some pursuits which are within and others which are without the operation of the bankruptcy act. We are here concerned, not with the broad limits of the respondent's charter, but with the nature of its business actually transacted at or about the time the petition in bankruptcy was filed. In re Kingston Realty Co., 160 Fed. 445, 87 C. C. A. 406; In re Quimby Co. (D. C.) 121 Fed. 139, s. c. on appeal 126 Fed. 167, 61 C. C. A. 111. The petitioners do not contend that the operation of the garage, pure and simple, is a pursuit within the purview of section 4 of the bankruptcy act. The referee and the learned judge of the District Court have agreed in finding that repairs and supplies constituted at least 75 per cent. of the respondent's business. Neither of them discriminates by any finding concerning the respective proportions of these two kinds of business, and we find no evidence in the record which enables us to separate the two. The objecting creditors do not deny that the furnishing of supplies is a trading pursuit, and so within the purview of section 4; but, inasmuch as there is no evidence that the furnishing of supplies alone constituted the principal part of the defendant's business, the petitioners, in order to maintain their case, must show that the repairing, as well as the supplying of automobiles, as carried on by the respondent, is within the purview of the bankruptcy act. To support their contention the petitioners do not rely upon any word in section 4 except "manufacturing," and so the decision of the case is made to turn upon the answer to this question: Was the repairing of automobiles, as performed by the respondent, a manufacturing pursuit?

The words descriptive of the various pursuits which bring a corporation within the scope of the bankruptcy act are words in common use,

and are to be given their everyday meaning. White Mountain Paper Co. v. Morse & Co., 127 Fed. 643, 62 C. C. A. 369. We do not think that the repairing of automobiles, as set out in the finding of the court below and in the evidence contained in the record, can fairly be described as a manufacturing pursuit. It seems to have been chiefly, if not altogether, the adjustment of automobile parts, bought from other persons, to existing automobiles. While no decided case is exactly in· point, both the definitions of manufacture given by courts of authority and the decisions which those courts have rendered on particular facts are here persuasive against the petitioners. Hall & Kaul Co. v. Friday, 158 Fed. 593, 87 C. C. A. 23; In re T. E. Hill Co., 148 Fed. 832, 78 C. C. A. 522; In re Kingston Realty Co., 160 Fed. 447, 87 C. C. A. 406; In re First Bank of Belle Fourche, 152 Fed. 64, 81 C. C. A. 260. In so far forth, therefore, as the defendant's business was repairing, that business was outside the act. If this be true, there was no proof that the respondent's principal business was within the scope of the act. This conclusion makes unnecessary the consideration of the other questions presented at the argument. The decree of the District Court adjudicating the respondent a bankrupt must therefore be reversed.

The decree of the District Court is reversed, the case is remanded to that court, with instructions to dismiss the petition with costs, and the appellants recover their costs of appeal.

NOTE.—The following is the opinion of Dodge, District Judge, in the court below:

DODGE, District Judge. According to the petition in this case the alleged bankrupt is a corporation "engaged principally in manufacturing and trading automobiles." According to the answer which is filed, not by the alleged bankrupt, but by a firm which claims to be its creditor for insurance premiums, it was not at the filing of the petition a corporation engaged principally either in manufacturing, trading, or mercantile pursuits, and therefore not within section 4 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]).

The evidence is that on or about January 1, 1908, the corporation had practically ceased the purchase and sale of automobiles; an agency under which it had previously dealt in them having been wound up. From January 1, 1908, to the filing of the petition on April 9, 1909, it "operated a garage," by which is meant that it stored automobiles, cared for them, and furnished them with gasoline and oil. Had the mere storage and care of automobiles been the principal business carried on during the period referred to, the analogy of the decisions which hold livery and boarding stables not within section 4 would no doubt require me to hold this corporation not subject to adjudication. Re H. J. Quimby Co. (D. C.) 121 Fed. 139; Id., 126 Fed. 167, 61 C. C. A. 111; Gallagher v. De Lancey Co. (D. C.) 158 Fed. 381. But the referee has found, and I see no reason in the evidence for disagreeing with him, that, besides operating a garage, the alleged bankrupt, during the same period, carried on a machine shop at its place of business; that at least 75 per cent. of its business consisted in repairing automobiles and furnishing supplies of all sorts for them; and that making such repairs and furnishing such supplies were its principal and foremost business. This, I think, is sufficient to bring it within section 4b.

The only act of bankruptcy charged is a general assignment. An instrument purporting to be a general assignment such as the petition describes was executed by J. E. Savell, the alleged bankrupt's president and treasurer, in its name, and was acknowledged by him to be its free act and deed. There had been a vote of the directors that this assignment be made, and Savell be authorized to sign the necessary papers as president and treasurer. The re-

spondent creditor objects that the directors' authority was insufficient for the purpose, and that a vote by the stockholders was necessary, so that the act of bankruptcy has not been committed, because the attempted general assignment is void. The general principle is that it lies within the powers of directors, as such, to make a general assignment of a corporation's property for its creditors' benefit. In Re Bates Machine Company (D. C.) 91 Fed. 625, upon which the objecting creditor relies, this is conceded (91 Fed. 628); but the court declined to infer from it that the directors had power, without the stockholders' assent, to admit the corporation's insolvency and its willingness to be adjudged bankrupt on that ground. This is a Massachusetts corporation, organized under St. 1903, p. 418, c. 437, which in section 19 assigns to directors "all of the powers of the corporation, except such as are conferred by law or by the by-laws of the corporation upon the stockholders." No provision of law is referred to which confers the power to make a general assignment upon the stockholders only, and the by-laws of the corporation have not been put in evidence. The vote of the directors and the execution of the assignment in pursuance of it having been shown, it seems to me that the general principle to which I have referred puts the burden upon the respondent creditor to show, by some provision of law or by some by-law of the company, that the directors did not possess the power which they undertook to exercise. There is no proof at present that the directors did not possess it. In the absence of such proof, I do not see how it can be said that the directors' action was wholly and absolutely void. It might have become valid by the ratification or acquiescence of the stockholders, and it appears from the evidence that Mr. Savell, who executed the general assignment, besides being president and treasurer, owned or controlled a majority of the stock. And, although a stockholder or a creditor might have the right to invalidate the assignment, it would not follow that it did not constitute an act of bankruptcy, under section 3 (4) of the bankruptcy act. The language of the act is not to be limited in its operation to assignments which are in all respects valid. Griffin v. Dutton et al., 165 Fed. 626, 91 C. C. A. 614, decided by the Court of Appeals for this Circuit, December 16, 1908. I must also agree with the referee, therefore, in his finding that the act of bankruptcy has been committed.

Adjudication ordered.