## In re COOLIDGE REFRIGERATOR & CAR CO.

(District Court. D. Massachusetts. April 14, 1911.)

### No. 16,092.

BANKRUPTCY (§ 72*)—CORPORATIONS—MANUFACTURING—"ENGAGED PRINCIPALLY IN MANUFACTURING."

Where a Massachusetts corporation was organized to deal in and manufacture refrigerators, refrigerator cars, and accessories, appliances, etc., but, at the time an involuntary bankruptcy petition was filed against it, it had never manufactured anything, or, begun business, beyond authorizing its directors to make an endeavor to get contracts, it was not subject to adjudication as a corporation "engaged principally in manufacturing," within Bankr. Act July 1, 1898, c. 541, § 4, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), prior to its amendment by Act Cong. June 25, 1910, c. 412, 36 Stat. 838.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 72.*

For other definitions, see Words and Phrases, vol. 8, p. 7650.

What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

In Bankruptcy. In the matter of involuntary bankruptcy proceedings against the Coolidge Refrigerator & Car Company. Adjudication denied. Petition dismissed.

Marvin M. Taylor, for petitioning creditors.
Roberts, Roberts & Cushman, for objecting creditor.

DODGE, District Judge. This involuntary petition alleges that the corporation, whose adjudication as a bankrupt is sought, has admitted in writing its inability to pay its debts and its willingness to be

adjudged a bankrupt upon that ground. The petition also alleges the corporation to be "engaged principally in manufacturing."

George F. Mead, claiming to be a creditor and a stockholder, has answered the petition, and denies that the corporation is or ever was engaged principally in manufacturing, as the petition alleges. The answer further sets up that the corporation is not and never has been engaged principally in manufacturing. trading, printing, publishing, or mercantile pursuits, and is, therefore, not amenable to the bankruptcy act.

Under a reference to ascertain and report the facts, the referee has submitted an agreed statement of facts, filed before him, upon which agreed statement the hearing here has been had. I therefore find the facts to be as set forth in the agreed statement thus before me. It may be referred to in connection herewith.

The alleged bankrupt, a Massachusetts corporation, incorporated November 12, 1904, was incorporated, as appears from its charter (Exhibit A), for purposes which undoubtedly included manufacturing and dealing in refrigerators, refrigerator and other cars, conveyances for transportation in cold storage, refrigerating systems and plants. and all accessories and appliances useful or necessary in connection therewith. The charter purposes also include manufacturing and dealing in ice, ice machinery, tools, etc., capable of being used in connection with said business. If it can be said to have been engaged principally in manufacturing when this petition was filed, on June 4, 1910, the controverted allegation in the petition is sustained; otherwise not. If not "engaged principally in manufacturing," there can be no adjudication; the petition having been filed before section 4 of the bankruptcy act had been made to include "all moneyed, business or commercial corporations," by the amendment which took effect June 25, 1910.

The corporation appears to have entered upon its business career, owning the refrigerator car which had previously been built under Mr. Coolidge's patent, been tested, and proved satisfactory. A fair summary, in brief, of what it has since done, according to the agreed facts, is believed to be as follows:

It began by trying to sell its stock, in order to raise working capital, and to that end made demonstrations or tests of the car, supervised by Mr. Coolidge as its employé. In January, 1905, the directors discussed a proposition for building 10 similar cars, but took no action. Its efforts to interest possible investors and raise the required capital by selling stock continued for three or four years, during which the company maintained offices in Boston for some time, incurred expenses, and contracted debts. It became necessary, early in 1906, to turn over the car to certain directors as security for advances, and thereafter to hire the car from them. They still own it, and under the lease from them it has, from time to time, earned a little money for the company. Toward the end of 1907 the Boston & Maine Railroad Company built 10 similar cars, under license from the company, and under Mr. Coolidge's supervision, but built them at its own expense, without paying any royalty, and re-

taining the cars as its own property; the company permitting this in order to advertise its cars and induce contracts for their construction. Authority was given the directors, at about the same time, to enter into contracts for building such cars upon a royalty.

It is not claimed that the company has ever actually manufactured any car, or any of the other things the manufacture whereof its charter authorized, or ever actually began such manufacture. Nor can I find from the agreed facts that it has ever taken any such actual steps preparatory to manufacturing as might enable me to hold that the manufacturing contemplated by its charter had been undertaken, as in White Mountain, etc., Co. v. Morse & Co., 127 Fed. 643, 62 C. C. A. 369. However broad the construction of section 4 sanctioned by the Court of Appeals for this circuit in that case, I am unable to regard it as sufficiently broad to warrant me in holding a concern engaged principally in manufacturing, which has never gone beyond authorizing its directors to make and endeavor to get contracts, and has never done anything which I am able to regard as a step taken in or preparatory to actual manufacture.

It is well settled that a charter authorizing manufacture is not enough, of itself, to make a manufacturing corporation for the purposes of the bankruptcy act.

The petitioners argue that the amendment of so much of section 4 as relates to corporations should be taken as declaratory of the real meaning of the provisions concerning corporations set forth in that section as it stood before the amendment; but this seems to me impossible, in view of the decisions in this circuit which have construed the provisions in question, the latest of which is Cate et al. v. Connell et al., 173 Fed. 445, 97 C. C. A. 647.

I am unable to believe that this corporation can lawfully be adjudicated, and must, therefore, dismiss the petition.